[Civ. No. 13360. First Dist., Div. Two. Feb. 7, 1947.]

JULIUS LOSER, Petitioner, v. THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent.

Francis McCarty for Petitioner.

Ralph E. Hoyt, District Attorney, Arthur H. Sherry, Assistant District Attorney, and John S. Cooper, Deputy District Attorney, for Respondent.

DOOLING, J.—Petitioner herein is joined as a defendant in the same indictment considered in *Stern* v. *Superior Court, ante,* p. 9 [177 P.2d 308]. Counts 2, 4 and 5 of the indictment were quashed as to him.

There is evidence that he was actively engaged with Stern in the commission of abortions, as a receptionist of women seeking abortions, while Stern was engaged in that illegal business in Contra Costa County; that he took to his codefendant Ray in San Francisco his share of the proceeds from abortions; and that he went with his codefendant Tracy to the Oakland office of their codefendant Stock to inform Stock that Stern had opened a place for the performance of abortions in Richmond. This visit to Stock is alleged as one of the overt acts done in furtherance of the conspiracy.

It is argued that the only evidence on the subject shows that petitioner withdrew from the conspiracy about June 1, 1946. Since petitioner's attack on the indictment hinges almost entirely on this evidence we quote it here verbatim:

"Q. When you first came down here to Oakland what did you and the other girl do? Were there two girls then? A. Yes sir.

"Q. Had Losier left? A. Yes sir.

"Q. When did he quit out there? A. Around the first of June.

"Q. Why did he quit? A. He had a fuss with the Doctor.

"Q. He had a fight with the Doctor? A. Yes sir.

"Q. What was that about? A. They just couldn't get along.

"Q. They couldn't get along? A. No sir."

Petitioner points to the fact that there is not a syllable of evidence in the transcript that after he quit about June 1, he was actively connected in any way with the conspiracy.

All of the substantive offenses, except those quashed as to petitioner, occurred in Oakland between August 1 and August 23, 1946. As to all of these offenses petitioner argues that there is no evidence before the grand jury to connect him with their commission.

A member of a conspiracy may effectively withdraw from it so as to exculpate himself from guilt for the future criminal acts of his coconspirators. (15 Am.Jur., Criminal Law, § 333, p. 22; 15 C.J.S., Conspiracy, § 78(a), p. 1110.) However, one who has joined a criminal conspiracy can only effectively withdraw therefrom by some affirmative act bringing home the fact of his withdrawal to his confederates. "Some affirmative act bringing home the withdrawal to the knowledge of his confederates is necessary, otherwise the conspiracy once established will be presumed to continue until the ends are accomplished or its abandonment established. (*People* v. *Tinnin*, 136 Cal.App. 301 [28 P.2d 951]; *Coates* v. *United States* (C.C.A. 9th) 59 F.2d 173. See generally 5 Cal.Jur. 423.)" *People* v. *Chait*, 69 Cal.App.2d 503, 514 [159 P.2d 445]; and cf. *People* v. *King*, 30 Cal.App.2d 185, 204 [85 P.2d 928]; *People* v. *Ortiz*, 63 Cal.App. 662, 670 [219 P. 1024].

There is no evidence of any communication of an intent to withdraw from the conspiracy to any fellow conspirator except Stern (if the evidence quoted above shows that) although petitioner was actively conspiring and cooperating with defendants Ray, Stock and others according to the evidence. We cannot therefore say that there was no evidence before the grand jury to connect him with the commission of the substantive offenses, or to put it affirmatively that the evidence compels the conclusion that he had effectively withdrawn from the conspiracy prior to their commission.

As to the conspiracy count petitioner repeats the argument made in *Anderson* v. *Superior Court*, *ante*, p. 22 [177 P.2d 315], that if guilty of conspiracy at all he is guilty of a different conspiracy from that charged in the indictment. We have sufficiently disposed of that argument in the Anderson case.

The indictment charges the formation of the conspiracy in Alameda County and petitioner insists that since the only evidence on the subject is to the effect that his part in the conspiracy was in Contra Costa County there is no evidence to support count 1 of the indictment, the conspiracy

charge. There is nothing in this point. The conspirators may be prosecuted in any county in which any overt act was done. (Pen. Code § 184.) The overt act done in Alameda County by petitioner in his visit to Dr. Stock is sufficient to fix the venue in that county. The allegation that Alameda County is the county in which defendants conspired is not the allegation of an essential element of the offense. (See *Hyde* v. *United States*, 225 U.S. 347, 366-367 [32 S.Ct. 793, 56 L.Ed. 1114], in which the Supreme Court of the United States upheld an indictment charging a conspiracy in the District of Columbia, where the defendants were at all times in California, but an overt act was done in the District of Columbia; and *Brown* v. *Elliott*, 225 U.S. 392 [32 S.Ct. 812, 56 L.Ed. 1136] where the indictment charged the formation of the conspiracy *at a place unknown* and the indictment was returned in a district where an overt act occurred.)

The alternative writ heretofore issued is discharged and the petition for a writ of prohibition denied.

Nourse, P. J., and Goodell, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied April 3, 1947. Carter, J., and Schauer, J., voted for a hearing.