[Crim. No. 7149. In Bank. Nov. 9, 1962.]

THE PEOPLE, Plaintiff and Appellant, v. JOSEPH W. CROSBY et al., Defendants and Respondents.

716

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow, Deputy Attorney General, William B. McKesson, District Attorney (Los Angeles), Harry Wood, Robert J. Lord and Harry B. Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

John Leo Harris, Shulman & Shulman, Adley M. Shulman, J. E. Simpson, Robert A. Eaton, J. Edward Fleishell, Loeb & Loeb, Herman F. Selvin and Clarence S. Hunt for Defendants and Respondents.

SCHAUER, J.—The People appeal from an order setting aside an indictment as to defendants Dardi, Seltzer, Blau, Smith, Hopps, and Drezner, and setting aside several counts thereof as to defendants Crosby and Schinasi.

The principal contentions of the People are (1) that the superior court erred in denying leave to amend the indictment before entry of defendants' pleas, and (2) that the record contains competent evidence to support the factual allegation in the indictment that an overt act (number 18) in further-ance of the conspiracy was committed within three-years prior to the filing thereof on October 4, 1960. We have reviewed the record and have concluded that these contentions are meritorious.

The indictment is the result of a grand jury investigation into the management of the Equitable Plan Company (here-inafter called "Equitable Plan"), an industrial loan company authorized under the Industrial Loan Law (Fin. Code, div. 7) to obtain funds from the public by issuing "thrift certificates" in the form of savings bank passbooks and to use such funds to make loans or to purchase conditional sale contracts.

In June and July 1957, the Commissioner of Corporations ordered Equitable Plan to discontinue certain unsafe and injurious practices in the conduct of its business (Fin. Code, § 18815) and to make good an extensive impairment of its capital (*id.*, § 18814). On December 20, 1957, the commissioner formally took possession of the company because of its failure to comply with such orders (*id.*, § 18818). The court-appointed trustee testified that the loss of capital to Equitable Plan's 4,500 depositors, most of whom are elderly persons, will total between six and seven million dollars.

In Count I of the indictment defendants Birrell, Prior, Berkwit, Skoglund, Crosby, Schinasi, Dardi, Seltzer, Blau, Smith, Hopps, and Drezner are charged with the crime of criminal conspiracy to commit crimes, to cheat and defraud by criminal means, and to obtain money by false promises with fraudulent intent not to perform such promises, in violation of section 182, subdivisions 1, 4 and 5 of the Penal Code. Counts II through VII charge acts of grand theft in violation of section 487, subdivision 1, and Count VIII charges viola-

tion of Corporations Code, section 3020, subdivision (b), through the falsification of corporate records. Not all the defendants are charged with commission of the substantive offenses, as will hereinafter be set forth.

Of the twelve named defendants, only eight are parties to this appeal.[1] Each of these eight made timely motions in the superior court to dismiss the indictment. (Pen. Code, § 995.) The court granted the motions of six defendants as to all counts charged, and of two defendants as to Counts II through V.[2] The People appeal from the order entered accordingly, insofar as it sets aside Count I and Counts II through V; no appeal is taken from the dismissal of the remaining counts. The present procedural posture of the case with respect to the motions of respondent defendants is summarized in the following table:

| | — COUNTS — | | | |
|---|---|---|---|---|
| | I | II-V | VI | VII-VIII |
| Crosby— | denied | granted (appeal) | denied | denied |
| Schinasi— | denied | granted (appeal) | denied | denied |
| Dardi— | granted (appeal) | granted (appeal) | granted (no appeal) | not charged |
| Seltzer— | granted (appeal) | not charged | not charged | granted (no appeal) |
| Blau— | granted (appeal) | not charged | not charged | granted (no appeal) |
| Smith— | granted (appeal) | not charged | not charged | not charged |
| Hopps— | granted (appeal) | not charged | not charged | not charged |
| Drezner— | granted (appeal) | not charged | not charged | not charged |

[1] In July 1959 an indictment charging defendant Birrell with 69 counts of grand larceny was filed in New York, and Birrell fled to Brazil; defendant Prior (Birrell's sister) is also beyond the jurisdiction of the Superior Court of the State of California; the People have abandoned their appeal as to defendant Skoglund; and the motion of defendant Berkwit to set aside the indictment as to him was denied in its entirety.

[2] The latter two (Crosby and Schinasi), together with Berkwit, sought writs of prohibition. Their petitions were denied by the District Court of Appeal without opinion.

*Sufficiency of the Evidence.* In arguing the question of the sufficiency of the evidence, counsel for the several defendants (in ultimate effect) give inadequate recognition to the fact that it is an indictment, not a judgment of conviction, that is here challenged. In these proceedings all parties must be guided by our settled rule that "An indictment will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." (*Bompensiero* v. *Superior Court* (1955) 44 Cal.2d 178, 183-184 [3] [281 P.2d 250].) As hereinafter more fully discussed, there must be legal, competent evidence as the basis of that "rational ground." While the record before us is not a model of clarity, the complexity of the financial transactions and manipulations involved may well explain such a presentation.

 At the grand jury hearings a total of 32 witnesses testified and some 330 exhibits were introduced. From the competent items of evidence thus presented, which need not be set out here in detail, the grand jury could reasonably have inferred (1) that in October 1953 defendants Birrell, Prior, Crosby, Schinasi, Dardi, and Smith conspired to buy Equitable Plan with $263,000 of its own money; (2) that these defendants, together with defendant Hopps, conspired during the ensuing six to eight months to appropriate to their own use some $700,000 in cash reserves of Equitable Plan by purchasing (from Hopps) and then cancelling an alleged policy of credit insurance, and by making alleged loans of $450,000 to corporations controlled by Birrell; (3) that defendants Drezner, Seltzer, and Blau subsequently took active part in the conspiracy and between 1954 and 1956 carried out a plan of making further alleged loans to Birrell-controlled corporations in the amount of three to four million dollars, which loans have proved to be virtually uncollectible; and (4) that in early 1957 defendant Berkwit joined the conspiracy and by means of the purchase of certain alleged "choses in action" (i.e., rights to receive rentals on oil drilling equipment leased to Birrell-controlled companies) consummated a wash transaction designed to simulate payment of some $600,000 owed to Equitable Plan by corporations owned or controlled by the various defendants. Tested by the *Bompensiero* standard, there is thus sufficient competent evidence to hold the defendants to answer to the counts here in issue.

 *Proposed Amendment of Count II.* During argument on the motions to dismiss the People orally moved to amend

Count II of the indictment by interlineation. Count II charges Crosby, Schinasi, Dardi, and three defendants not here involved, with the theft of $212,445.88 from Equitable Plan on October 28, 1953. The proposed amendment would have changed the amount allegedly stolen to $250,000 and the date of the theft to October 26, 1953. The superior court denied the motion on the ground that to allow the amendment would be the equivalent of changing the offense charged, in violation of Penal Code section 1009.[3] The People contend that the ruling was in error, in that the amendment merely sought to correct an obvious clerical mistake.

The contention is well taken. As they now read, Counts II and III both purport to charge the same defendants with committing grand theft from Equitable Plan on the same day (October 28, 1953) and in precisely the same amount ($212,-445.88). The evidence, however, shows only one transaction in that amount occurring on that day: the payment of the *second* of four alleged premiums on credit insurance taken out by the new management of Equitable Plan (including several of the respondent defendants) during the fall and winter of 1953-1954. *The first premium was paid by a check for $250,000 on October 26, 1953, as alleged in overt act number 3.* The third premium was paid by a check for $150,000 on December 1, 1953; Count IV charges grand theft in that amount and on that date. And the fourth premium was paid by a check for $27,343.95 on January 4, 1954; Count V charges grand theft in that amount and on that date. In the premises it is evident that the grand jury intended to charge one count of grand theft for each premium payment made; and that the duplication of dates and amounts in Counts II and III, when

---

[3]Section 1009 provides in relevant part: ''An indictment, accusation or information may be amended by the district attorney, and an amended complaint may be filed by the prosecuting attorney in any inferior court, without leave of court at any time before the defendant pleads or a demurrer to the original pleading is sustained. The court in which an action is pending may order or permit an amendment of an indictment, accusation or information, or the filing of an amended complaint, for any defect or insufficiency, at any stage of the proceedings, or if the defect in an indictment or information be one that cannot be remedied by amendment, may order the case submitted to the same or another grand jury, or a new information to be filed. The defendant shall be required to plead to such amendment or amended pleading forthwith, or, at the time fixed for pleading, if he has not yet pleaded and the trial or other proceeding shall continue as if the pleading had been originally filed as amended, unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable postponement, not longer than the ends of justice require, may be granted. An indictment or accusation cannot be amended so as to change the offense charged. . . .''

viewed in the light of the failure to charge as grand theft the first of the four payments, was the result of a simple clerical or typographical mistake in drawing up the multiple counts of the indictment. The timely correction of such a mistake does not "change the offense charged" and hence is permissible. (See, e.g., *United States* v. *Denny* (7 Cir. 1947) 165 F.2d 668, 670 [6], cert. den. 333 U.S. 844 [69 S.Ct. 662, 92 L.Ed. 1127] [typographical error in charging defendant's name]; *United States* v. *Choy Kum* (N.D.Cal. 1950) 91 F. Supp. 769 [1] [mistaken citation of statute allegedly violated]; *People* v. *Jim Ti* (1867) 32 Cal. 60, 64 [mistake in alleging defendant's name];[4] *People* v. *Kelly* (1856) 6 Cal. 210, 212-214 [same]; *People* v. *Blair* (1961) 195 Cal.App.2d 1, 7 [1] [15 Cal.Rptr. 533] [same]; *People* v. *Wilder* (1955) 135 Cal.App.2d 742, 749 [8] [287 P.2d 854] [mistaken allegation of date of commission of offense]; *People* v. *Stone* (1949) 89 Cal.App.2d 853, 859-860 [1] [202 P.2d 333] [same]; *People* v. *Bocchio* (1926) 80 Cal.App. 138, 141 [1] [251 P. 672] [mistaken allegation of value of property obtained by false pretenses]; *People* v. *Carroll* (1919) 39 Cal.App. 654, 656-657 [180 P. 49] [mistaken allegation of another name for that of defendant]; cf. *People* v. *Courtney* (1933) 132 Cal.App. 198, 201 [1] [22 P.2d 741] [mistake in charging two identical counts].)

The record shows that at the time of the motion to amend no defendant had yet pleaded to the indictment,[5] nor had any demurrer thereto been sustained. In such circumstances Penal Code section 1009 (*ante,* fn. 3) expressly authorizes the district attorney to amend the indictment as a matter of right, subject only to the requirement that it not be amended so as to change the offense charged. It was therefore error to deny the People's motion to amend the indictment in this respect.

 *Proposed Amendment of Allegation of Facts Tolling the Statute of Limitations.* The last paragraph of the indictment contains an allegation to the effect that certain defendants, of whom Crosby, Schinasi, Seltzer, and Blau are parties to this appeal, were absent from California from February 25, 1957, to the date of the indictment (October 4, 1960). It is

---

[4]The latter amendment is also authorized by Penal Code section 953, which reads: "When a defendant is charged by a fictitious or erroneous name, and in any stage of the proceedings his true name is discovered, it must be inserted in the subsequent proceedings, referring to the fact of his being charged by the name mentioned in the accusatory pleading."

[5]Defendant Berkwit, who is not charged in Counts II or III, had entered and then withdrawn a plea of not guilty prior to the subject motion.

722

conceded by the People that such allegation is insufficient to toll the statute of limitations on Counts II through V (Pen. Code, § 800), in that more than three years elapsed between the last act of grand theft therein charged (January 4, 1954) and the alleged date of defendants' departure from the state (February 25, 1957). At the time of the above discussed motion to amend Count II the People also moved to strike this last paragraph of the indictment and to substitute therefor a written amendment alleging, as to the defendants here involved, that Crosby, Schinasi, and Dardi were absent from California from October 26, 1953, to the date of the indictment, except for occasional visits of short duration totaling less than 60 days.[6] The motion was denied, and the People challenge this ruling as erroneous.

In support of the superior court's action defendants argue that the statute of limitations is jurisdictional, and that an indictment which shows on its face that the prosecution is barred by limitation ''fails to state a public offense.'' (*People* v. *McGee* (1934) 1 Cal.2d 611, 613 [1] [36 P.2d 378]; see also *People* v. *Holtzendorff* (1960) 177 Cal.App.2d 788, 792 [2] [2 Cal.Rptr. 676]; *In re Davis* (1936) 13 Cal.App.2d 109, 111 [2] [56 P.2d 302].) The correctness of the foregoing proposition may be conceded, but it does not mean that—as defendants conclude—the indictment in the case at bench cannot be amended.

■ An indictment which when filed shows on its face that it is barred by the statute of limitations ''fails to state a public offense'' only in the sense that, *if not amended,* it will be subject to being set aside on motion pursuant to Penal Code section 995 (cf. *People* v. *Holtzendorff* (1960) *supra,* 177 Cal. App.2d 788, 792 [1]-797 [7]), and a conviction based thereon will be subject to attack, either directly (*People* v. *McGee* (1934), *supra,* 1 Cal.2d 611, 613 [2] [motion to vacate judgment]) or collaterally (*In re Davis* (1936), *supra,* 13 Cal. App.2d 109, 111 [1-2] [habeas corpus]). ■ But in enacting Penal Code section 1009 the Legislature has manifested its clear intent that the remedy of amendment be available to save an indictment from ''any defect or insufficiency,'' provided that the offense which the grand jury sought to charge is itself not changed. ■ Since 1927 it has been enough if the indictment is cast ''in any words sufficient to give the

---

[6]The date of Blau's alleged departure from the state (February 25, 1957) remained unchanged, and allegation of Seltzer's absence was omitted.

accused notice of the offense of which he is accused'' (Pen. Code, § 952) ; the particular details of the offense will be furnished to him by the transcript of the testimony on which the indictment is founded (*People* v. *Anderson* (1961) 55 Cal.2d 655, 657-658 [2] [12 Cal.Rptr. 500, 361 P.2d 32] ). ▮ If the required notice is given, the omission of an allegation charging a technical ''essential'' element of the offense may, pursuant to section 1009, be corrected by timely amendment. Thus, in *Leonard* v. *Superior Court* (1935) 4 Cal.2d 215, 219 [4] [48 P.2d 687], this court stated, ''That the offense of perjury was imperfectly charged in the original indictment may be assumed, . . . but that is precisely what section 1008 [now § 1009] of the Penal Code was designed to meet, and the only requirement is that however imperfectly pleaded, some offense be pleaded, which in substance may not be changed by amendment.'' Here there is no doubt that the indictment is sufficient to give each defendant ''notice of the offense of which he is accused''; the determinative question, once again, is whether the proposed amendment is such as to ''change the offense charged'' within the meaning of section 1009 of the Penal Code.

▮ It has been held in a variety of contexts that an amendment adding an omitted allegation of a substantive element of the offense sought to be charged does not ''change the offense.'' (See e.g., *Leonard* v. *Superior Court* (1935), *supra,* 4 Cal.2d 215, 218 [3]-[219 [4] [perjury] ; *People* v. *Seitz* (1930) 209 Cal. 199, 202-203 [1] [286 P. 697] [fraudulent insurance claim] ; *People* v. *Agnew* (1947) 77 Cal.App. 2d 748, 757 [9-10] [176 P.2d 724] [perjury] ; *People* v. *Bellamy* (1926) 79 Cal.App. 160, 162 [2] [248 P. 1042] [pimping].) Thus, in *Chrisman* v. *Superior Court* (1922) 59 Cal.App. 305, 308-309 [2] [210 P. 632], it was said that ''Though it may be that the failure of the defendant to fulfill his promise to cancel the order [for payment of money] and deliver the same to Adriani *was an essential allegation to the charge of obtaining money by false pretenses,* it is apparent that the addition of such allegation by amendment to the indictment *did not change the offense charged.''* (Italics added.)

▮ *A fortiori,* an amendment merely adding or extending allegations tolling the statute of limitations would not change the offense charged, for ''although the right to maintain the action is an essential element in the final power to pronounce judgment, that element constitutes no part of the crime itself.'' (*People* v. *McGill* (1935) 10 Cal.App.2d 155,

159 [2] [51 P.2d 433].) No California case involving these precise facts has been found, but a materially similar situation was presented in *People* v. *Joseph* (1937) 21 Cal.App.2d 336, 338 [1] [69 P.2d 465], where it was held that an amendment adding an omitted allegation of venue did not "change the offense charged" within the meaning of section 1009. The same rule should obtain in the case at bench.[7]

*Order Setting Aside Counts II through V as to Crosby, Schinasi, and Dardi.* From the foregoing, however, it does not necessarily follow that the superior court erred in setting aside Counts II through V as to each of these three defendants. The People urge that the record of the grand jury proceedings need not show evidentiary support for allegations in the indictment tolling the statute of limitations. There is no authority for such a position, and ample reason appears for rejecting it.

As we first observed in *Greenberg* v. *Superior Court* (1942) 19 Cal.2d 319, 321 [1] [121 P.2d 713], "the necessity of basing an indictment upon evidence is implicit in section 921 [now § 939.8] of the Penal Code which provides: 'The grand jury ought to find [now, "shall find"] an indictment when all the evidence before them, taken together, if unexplained or uncontradicted, would, in their judgment, warrant a conviction by a trial jury.' " Accordingly, an indictment or count thereof which is wholly without evidential support cannot stand. (*Greenberg* v. *Superior Court* (1942), *supra*, 19 Cal.2d 319; *Cotton* v. *Superior Court* (1961) 56 Cal.2d 459, 463-465 [5] [15 Cal.Rptr. 65, 364 P.2d 241]; *Saugstad* v. *Superior Court* (1960) 183 Cal.App.2d 277, 282-283 [1b], 287 [6] [6 Cal.Rptr. 580]; *Davis* v. *Superior Court* (1959) 175 Cal.App.2d 8, 22 [7a]-26 [7c] [345 P.2d 513].) ▮ An accusatory pleading must allege facts showing that the prosecution is not barred by the statute of limitations (*People* v. *McGee* (1934), *supra*, 1 Cal.2d 611, 613 [1]; *People* v. *Asavis* (1938) 27 Cal.App.2d 685, 687 [1] [81 P.2d 595]; *In re Davis* (1936), *supra*, 13 Cal.App.2d 109, 111 [1]; *People* v. *McGill* (1935), *supra*, 10 Cal.App.2d 155, 159 [2]), and if a period of time in excess of that permitted by the statute has elapsed

[7]Defendants' reliance on *Ex Parte Bain* (1887) 121 U.S. 1 [7 S.Ct. 781, 30 L.Ed. 849], and on dicta in *Mitchell* v. *Superior Court* (1926) 76 Cal. App. 734, 737-738 [4] [245 P. 1109], *People* v. *Webber* (1919) 44 Cal. App. 120, 126 [2] [186 P. 406], and *People* v. *Anthony* (1912) 20 Cal.App. 586, 589-590 [129 P. 968], is misplaced, as such decisions "were expressions of the courts upon statutes long since in desuetude." (*People* v. *Agnew* (1947), *supra*, 77 Cal.App.2d 748, 757 [10].)

since the commission of the offense, further facts must be alleged to show absence of the defendant from the state for a sufficient period to toll the statute under Penal Code section 802 (*People* v. *McGee* (1934), *supra,* 1 Cal.2d 611, 613-614 [2]; *People* v. *Miller* (1859) 12 Cal. 291, 295; *In re Mc-Gee* (1938) 29 Cal.App.2d 648, 650 [2] [85 P.2d 135]; *People* v. *McGill* (1935), *supra,* 10 Cal.App.2d 155, 159 [2]; see generally cases collected in Note, 99 A.L.R. 153, 154-155).

At the trial the People need not prove that the offense was committed on the exact date alleged, ''except where the time is a material ingredient in the offense.'' (Pen. Code, § 955; see also § 959, subd. 6.) Yet as the bar of the statute is a jurisdictional defect rather than simply an affirmative defense which must be raised by special plea (such as double jeopardy), the burden is on the People of establishing that the offense was committed within the applicable period of limitations. (*People* v. *Boyden,* (1953) 116 Cal.App.2d 278, 287 [7] [253 P.2d 773]; *People* v. *Amy* (1950) 100 Cal.App. 2d 126, 127 [2] [223 P.2d 69]; *People* v. *Cunningham* (1950) 99 Cal.App.2d 296, 298-299 [1-2] [221 P.2d 283]; cf. *People* v. *Newell* (1923) 192 Cal. 659, 669-670 [8] [221 P. 622].) Failure to sustain that burden will result in vacation or reversal of the judgment of conviction. (*People* v. *McGee* (1934), *supra,* 1 Cal.2d 611, [1] - 614 [2]; *People* v. *James* (1943) 59 Cal. App.2d 121, 122 [3] - 123 [4] [138 P.2d 30]; *People* v. *Hoffman* (1933) 132 Cal.App. 60, 62-63 [1] [22 P.2d 229].)

It follows that if the evidence upon which the indictment is based is to ''warrant a conviction by a trial jury'' (Pen. Code, § 939.8), it must include at least some evidence that the prosecution is not barred by the statute of limitations.

That evidence, moreover, must be legal, competent evidence. It is settled that in the case of an information a defendant is held to answer without reasonable or probable cause ''if his commitment is based entirely on incompetent evidence'' (*Rogers* v. *Superior Court* (1955) 46 Cal.2d 3, 7 [1] [291 P.2d 929]; accord, *Bielicki* v. *Superior Court* (1962) 57 Cal.2d 602, 605 [1] [21 Cal.Rptr. 552, 371 P.2d 288], and cases there cited). Although this court has not had occasion to speak to the question of whether the same rule should apply to an indictment, the District Court of Appeal has answered in the affirmative in a number of recent decisions (*People* v. *Olf* (1961) 195 Cal.App.2d 97, 101 [1] [15 Cal.Rptr. 390]; *People* v. *Byars* (1961) 188 Cal.App.2d 794, 795 [1] - 796 [3] [10 Cal.Rptr. 677]; *Davis* v. *Superior Court* (1959),

*supra,* 175 Cal.App.2d 8, 22 [7a] - 26 [7c]; *McFarland* v. *Superior Court* (1948) 88 Cal.App.2d 153, 159 [6] [198 P.2d 318]; *Dong Haw* v. *Superior Court* (1947) 81 Cal.App.2d 153, 158 [2] - 159 [3] [183 P.2d 724].) Support for this view is found not only in our reasoning in the *Rogers* case (at pp. 7 [2] - 8 [7] of 46 Cal.2d), but also in the express language of Penal Code section 939.6 (formerly § 919), which provides: "In the investigation of a charge, the grand jury shall receive no other evidence than such as is given by witnesses produced and sworn before the grand jury, furnished by legal documentary evidence, or the deposition of a witness in the cases mentioned in subdivision 3 of Section 686. The grand jury shall receive none but legal evidence, and the best evidence in degree, to the exclusion of hearsay or secondary evidence." The issue therefore is whether there is some legal, competent evidence in the record of the grand jury proceedings to support the allegations (in the proposed amendment) charging that Crosby, Schinasi, and Dardi were absent from the state from October 26, 1953, to October 4, 1960.

 *Crosby and Schinasi.* Special investigators of the California Division of Corporations testified that Crosby and Schinasi were registered voters in New York City during the period here in question, and certified summaries of entries on the New York City Register of Voters were identified and introduced showing that they had declared New York to be their place of residence for many years prior to the date of the indictment. This evidence is admissible (Code Civ. Proc., §§ 1855, subd. 3, and 1918, subd. 7), and is sufficient at this stage to support the subject allegations.

 *Dardi.* No such evidence appears, however, as to Dardi. The People point to several instances where witnesses refer to this defendant in one connection or another, but in each case the testimony is either inadmissible hearsay or proves nothing with respect to Dardi's alleged absence from California. In particular, the People emphasize testimony of Special Investigator Hale to the effect that, while he found no record that Dardi had ever been a registered voter in New York, he did find the name "Virgil Dardi" listed in New York City telephone directories for the years 1954 through 1960. The directories were not produced, the only evidence of their contents being the just related testimony. Such secondary evidence, however, is not shown to be admissible under any provision of Code of Civil Procedure section 1855, and hence is violative of the best evidence rule (Code Civ. Proc., § 1937); and when

offered to prove the truth of the implication that the ''Virgil Dardi'' listed in the directories was this defendant, the testimony is violative also of the hearsay rule (Code Civ. Proc., § 1845). The People's reliance on *People* v. *Eppinger* (1894) 105 Cal. 36, 41 [38 P. 538], *People* v. *Terrill* (1901) 133 Cal. 120, 128 [65 P. 303], and *People* v. *McWilliams* (1931) 117 Cal.App. 732, 736 [3] [4 P.2d 60]), is to no avail, as in those cases either the (city) directories were actually introduced, or no objection was made thereto on the present grounds.

It thus appears that Dardi's motion to set aside Counts II through V as to him was properly granted (although, for the reasons hereinafter stated, it was error to grant Dardi's motion to set aside Count I of the indictment as to him). The same motions of Crosby and Schinasi, however, should have been denied: the record contains competent evidence to connect each with the commission of the crimes charged and to support the allegation (in the proposed amendment) that each was absent from the state for a sufficient period to toll the statute of limitations.

 *Order Setting Aside Count I as to Dardi, Seltzer, Blau, Smith, Hopps, and Drezner.* The superior court ruled that the applicable period of limitations began to run on Count I (conspiracy) from the date that the last overt act alleged was committed by one of the conspirators. Only two overt acts, numbered 17 and 18, are alleged to have occurred in that period, and the court found no competent evidence to support the allegation of either. The People attack these rulings.

To begin with, the People point out that in Count I it is alleged ''That continuously throughout the period of time from about October 1, 1953, until December 20, 1957, . . . the said defendants . . . willfully, unlawfully, feloniously and knowingly conspired'' to commit the various crimes charged. The People then argue that the criminal agreement, not any overt act committed in pursuance thereof, is the gist of the offense of conspiracy; that the period of limitations therefore begins to run from the ''end'' of that agreement (meaning, presumably, the moment when the conspiracy either attains its objective or is interrupted by the arrest of the conspirators) rather than from the date of the last overt act alleged; and that in the present case the indictment charged such an agreement ''continuing'' to a date (December 20, 1957) within the period of limitations.

The argument is untenable. In this state the Legislature has

declared that "No agreement amounts to a conspiracy" unless an overt act be done to effect the object thereof (Pen. Code, § 184), and the pleading and proof of such an act is "necessary to constitute the offense" (*id.*, § 1104). As the overt act marks the commission of the crime and fastens criminal liability upon the conspirators (*People* v. *Van Eyk* (1961) 56 Cal.2d 471, 478 [6] [15 Cal.Rptr. 150, 364 P.2d 326]; *People* v. *Robinson* (1954) 43 Cal.2d 132, 138 [7] [271 P.2d 865]; *People* v. *Buffum* (1953) 40 Cal.2d 709, 715 [1] [256 P.2d 317]), the period of limitations must be deemed to begin running at that time; and where, as here, the conspiracy as charged is a continuing one, the period begins to run with the commission of the last overt act alleged. This rule is clearly implied in our statement in *Bompensiero* v. *Superior Court* (1955) 44 Cal.2d 178, 184-185 [6] [281 P.2d 250], that in order to prevent a conspiracy count from being barred by the statute of limitations "Proof that one of the overt acts in furtherance of the conspiracy occurred after the time before which the statute of limitations would be a bar is sufficient. . . ." The same implications appears in *People* v. *Hess* (1951) 104 Cal.App.2d 642, 678 [27] [234 P.2d 65], and in *People* v. *Gordon* (1945) 71 Cal.App.2d 606, 628-629 [16] [163 P.2d 110]; and in *People* v. *Mason* (1960) 184 Cal.App.2d 317, 368 [34a] - 369 [34b] [7 Cal.Rptr. 627], a jury instruction was approved expressly embodying this rule. It is, moreover, the rule uniformly applied in the federal courts (*Grunewald* v. *United States* (1957) 353 U.S. 391, 396-397 [77 S.Ct. 963, 1 L.Ed.2d 931, 62 A.L.R.2d 1344]; *Fiswick* v. *United States* (1946) 329 U.S. 211, 216 [67 S.Ct. 224, 91 L.Ed. 196]); and it is the prevailing rule in our sister states (see cases collected in Note, 62 A.L.R.2d 1369, 1371-1375).

Seeking to avoid the effect of this rule the People cite *People* v. *Buono* (1961) 191 Cal.App.2d 203, 233 [23a] - 235 [23b] [12 Cal.Rptr. 604], *People* v. *Wells* (1960) 187 Cal. App.2d 324, 329 [12] - 331 [14a] [9 Cal.Rptr. 384], and *People* v. *Brown* (1955) 131 Cal.App.2d 643, 656 [5a] - 657 [5b] [281 P.2d 319], for the proposition that under California law a conspiracy may be deemed to continue after its immediate objective has been accomplished, so as to include within its scope concerted efforts of the conspirators to escape or to conceal commission of the crime. It is urged that here the efforts at concealment were not simply to avoid detection of past thefts, but also to enable the conspirators to commit future thefts undetected. The cited cases, however, hold only that the

acts or declarations of one conspirator during such a period of escape or concealment may be binding on each of his coconspirators. Even in that situation it will be necessary for the prosecution to plead and prove that an overt act in furtherance of the conspiracy as thus "extended" was committed by a conspirator during the period not barred by limitation.

As noted above, the overt acts numbered 17 and 18 are the only ones alleged to have occurred within the three year period preceding the filing of the indictment on October 4, 1960. As to overt act 17, the evidence shows that it took place "around October 1st," apparently in 1957, and hence did not fall within the period not barred. The People impliedly concede as much, and rely rather on overt act 18. The latter is alleged in the indictment in these terms: "In pursuance of such conspiracy, and to effect the object of the same, the said defendant, ELIOT E. BERKWIT, did withdraw and cause to be withdrawn from the funds of Equitable Plan Company the sum of approximately seventeen thousand dollars ($17,000.00) from October 2, 1957 to December 20, 1957." Berkwit had entered the scene in February 1957, and apparently had taken control of Equitable Plan through purchase of a majority of its stock by Finance (or Fiscal) Bureau, Inc., a corporation which he had set up for that purpose. As evidence tending to support the allegation of overt act 18, the People point to the following testimony of William Keenan, an accountant with Equitable Plan since March 1956:

"Q. By MR. DI SANTIS [deputy district attorney]: I ask you whether or not you have ever had occasion to review the accounts of Finance and Fiscal Bureau, Inc. on the books of Equitable Plan Company? A. Yes, I have.

"Q. Mr. Keenan, did the Equitable Plan Company from October, 1957 to December of 1957 pay out any funds to Finance Bureau, Inc.? A. Yes, they did.

"Q. How much was that? A. The total amount during that period was seventeen thousand seven hundred twenty-eight dollars and thirty-one cents net.

"Q. Mr. Keenan, did you handle some of the books of Finance Bureau, Inc. from time to time? A. Originally, yes, I did.

"Q. *To your knowledge* did Mr. Berkwit obtain the sums which you have indicated there? A. Yes, he did.

"Q. He received it by way of salary, Mr. Keenan? A. Well, the disbursements on this seventeen thousand seven hundred

twenty-eight dollars thirty-one cents as I recall was mostly for salary for Mr. Berkwit.'' (Italics added.)

From the just quoted testimony the grand jury could reasonably have inferred that the witness had first-hand knowledge of the events constituting overt act 18. Defendants argue that, on the contrary, Keenan's language could be taken to mean that he had no first-hand knowledge of any payment to Berkwit and was merely summarizing what he had seen in the books and accounts of Equitable Plan. Defendants further suggest that Keenan's testimony with respect to dates is ambiguous, in that his affirmative answer to the question of whether Equitable Plan paid out funds to Finance Bureau ''from October, 1957 to December of 1957'' is equally consistent with payment of the entire seventeen thousand dollars in the first four days of October alone (and hence beyond the period of limitations). ▆▆▆ The choice between conflicting factual inferences, however, is (so far as is material in the matter now at bench) for the grand jury to determine. If, as here, there is some competent evidence to support that determination, a court will not substitute its judgment for that of the grand jury. (*Lorenson* v. *Superior Court* (1950) 35 Cal.2d 49, 55 [1] [216 P.2d 859].)

▆▆▆ Finally, the grand jury could have inferred that the payment of Berkwit's salary and expenses by Equitable plan (via Berkwit's corporate creation, Finance Bureau) was an act done in furtherance of the purposes of the conspiracy, as it tended to enable the defendants to carry on the looting of Equitable Plan while purportedly bringing in a new management and relinquishing their control of the company.

It follows that the superior court erred in ruling that prosecution on the conspiracy count (Count I) is barred by the statute of limitations. Several defendants (Dardi, Seltzer, Blau, and Hopps) assert that they withdrew from the conspiracy at an early stage, and argue that the period of limitations began running as to them at the time of their withdrawal and hence expired prior to the filing of the indictment. ▆▆▆ A defendant's mere failure to continue previously active participation in a conspiracy, however, is not enough to constitute withdrawal; there must be an affirmative and bona fide rejection or repudiation of the conspiracy, communicated to the coconspirators. (*Hyde* v. *United States* (1912) 225 U.S. 347, 369 [32 S.Ct. 793, 56 L.Ed. 1114] ; *United States* v. *Witt* (2d Cir. 1954) 215 F.2d 580, 584 [5], and cases there cited ; *People* v. *Moran* (1958) 166 Cal.App.2d 410, 415-416 [9] [333 P.2d

243]; *Loser* v. *Superior Court* (1947) 78 Cal.App.2d 30, 32 [1-2] [177 P.2d 320]; *People* v. *Corkery* (1933) 134 Cal.App. 294, 297-299 [2] [25 P.2d 257]; see generally Note, 62 A.L.R. 2d 1369, 1384-1385.) ▮▮▮ It is not part of the People's prima facie case to negate the possibility of such a withdrawal. Once the defendant's participation in the conspiracy is shown, it will be presumed to continue unless he is able to prove—as a matter of defense—that he effectively withdrew from the conspiracy before the relevant period of limitations began to run. (*Pinkerton* v. *United States* (1946) 328 U.S. 640, 646 [66 S.Ct. 1180, 90 L.Ed. 1489]; *Local 167 I.B.T.C.* v. *United States* (1934) 291 U.S. 293, 297-298 [54 S.Ct. 396, 78 L.Ed. 804]; *United States* v. *Witt* (2d Cir. 1954), *supra*, 215 F.2d 580, 584 [5]; *United States* v. *Markman* (2d Cir. 1952) 193 F.2d 574, 576 [5]; *United States* v. *Benjamin* (2d Cir. 1941) 120 F.2d 521, 523 [5]; *People* v. *Moran* (1958), *supra*, 166 Cal.App.2d 410, 415-416 [9]; *People* v. *Chait* (1945) 69 Cal.App.2d 503, 514 [5] [159 P.2d 445], and cases there cited.) Thus in *United States* v. *Compagna* (2d Cir. 1944) 146 F.2d 524, 527 [4], cert. den. 324 U.S. 867 [65 S.Ct. 912, 89 L.Ed. 1422], the court (per Learned Hand, J.) upheld "the well established doctrine that anyone, once shown to have been a member of a conspiracy which lasts until the beginning of the statutory period, must satisfy the jury by affirmative proof that he disconnected himself from it before that period began." When the prosecution is initiated by means of indictment such proof cannot ordinarily be offered until the trial, as is true of other affirmative defenses or matters in abatement which the defendant may wish to interpose. Here, defendants will have that opportunity at the proper time. At the present stage of the proceedings, probable cause is shown by the fact that from the competent evidence introduced the grand jury could reasonably have inferred the existence of the conspiracy charged and the participation therein of each of the named defendants.

The order appealed from is affirmed insofar as it sets aside Counts II, III, IV, and V, with respect to defendant Dardi; in all other respects the order is reversed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., and Tobriner, J., concurred.

Respondents' petition for rehearing was denied December 5, 1962. White, J.,* participated therein.

---

*Assigned by Chairman of Judicial Council.