Filed 3/5/24  P. v. Amaya CA4/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE ALFREDO AMAYA,<br><br>    Defendant and Appellant. | G061860<br><br>(Super. Ct. No. 02NF0294)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

It is hereby ordered that the opinion filed on February 14, 2024, be modified as follows:

1.    On page 3, in the second sentence of the first paragraph, change "2022" to "2002."

2.    On page 5, in the second paragraph after the first sentence and its citation, add:

As amended by Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), section 1172.6, subdivision (a), was expanded to include, among other things, murder convictions on a "theory under which malice is imputed to a person based solely on that person's participation in a crime."

3. On page 5, in the last sentence of the third paragraph, delete "a defendant so convicted is not eligible for resentencing under section 1172.6 as a matter of law (*People v. Whitson* (2022) 79 Cal.App.5th 22, 34–36)"; and replace with "a defendant convicted of murder under a theory of conspiracy to commit murder is not eligible for resentencing under section 1172.6 as a matter of law (*People v. Whitson* (2022) 79 Cal.App.5th 22, 31–32)."

4. On page 6, after the first full paragraph, add:

In a petition for rehearing, Amaya argues for the first time that he could have been found guilty of conspiracy to commit murder, but not guilty of the completed murder by Zapien. According to Amaya, the jury could have found Amaya agreed with Zapien to kill Sayamontry, drove them to the park, but decided not to go through the murder. Amaya contends under this scenario the jury would have imputed the intent to kill from Zapien's later act of shooting Sayamontry. We are unpersuaded.

"'Conspiracy is an inchoate crime,'" and as such, "'conspiracy fixes the point of legal intervention at [the time of] agreement to commit a crime.'" (*People v. Morante* (1999) 20 Cal.4th 403, 416–417.) This "agreement is *a continuous act*; thus conspiracy is said to be a continuing crime." (*People v. Von Villas* (1992) 11 Cal.App.4th 175, 244, italics added.) "Once the defendant's participation in the conspiracy is shown, it will be presumed to continue unless he is able to prove — as a matter of defense — that he effectively withdrew from the conspiracy . . . ." (*People v. Crosby* (1962) 58 Cal.2d 713, 731.)

Here, the jury was instructed that a member of a conspiracy is liable for the acts of his co-conspirators until he effectively withdraws from the conspiracy or it terminates. (CALJIC No. 620.) The jury was further instructed an effective withdrawal requires "an affirmative and good faith rejection or repudiation of the conspiracy" communicated to the other known co-conspirators, and a member who has effectively withdrawn from the conspiracy "is not thereafter liable for any act of the co-conspirators

2

committed." (*Ibid.*)    Thus, if Amaya's murder conviction was based on the theory of conspiracy to commit murder, the jury would have necessarily found Amaya had not effectively withdrawn from, and remained a member of, the conspiracy to kill Sayamontry when Zapien shot him.

There is no change in the judgment.

The petition for rehearing is DENIED.


DELANEY, J.

WE CONCUR:



MOORE, ACTING P. J.



MOTOIKE, J.

3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061860 |
| v. | (Super. Ct. No. 02NF0294) |
| JOSE ALFREDO AMAYA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Michael A. Leversen, Judge.  Affirmed.

Joseph F. Walsh for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Lynne G. McGinnis and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

In 2003, a jury found Jose Alfredo Amaya guilty of first degree murder (Pen. Code, § 187, subd. (a)),[1] among other offenses.  The jury found true the gang-murder special circumstance allegation (§ 190.2, subd. (a)(22)), the criminal street gang sentencing enhancement (§ 186.22, subd. (b)(1)), and the vicarious gang-related firearm enhancement (§ 12022.53, subds. (d) & (e)(1)).  Amaya was sentenced to life in prison without the possibility of parole for the murder, consecutive to a term of 25 years to life for the vicarious firearm enhancement.

Amaya later petitioned for relief from his murder conviction under former section 1170.95 (now § 1172.6).[2]  He argued the jury was instructed on theories permitting it to impute malice to him based on the actions of his codefendant, Alex Zapien.  The trial court denied the petition for failure to state a prima facie case.  We affirm.  Although Amaya was not the actual killer, the record of conviction shows the jury found him guilty as either a direct aider and abettor or co-conspirator to murder.  Because both theories are still valid theories of murder liability, Amaya is ineligible for section 1172.6 relief as a matter of law.

**FACTS**

I.     *The Murder of Bobby Sayamontry*

The following summary of facts are provided for background purposes.  They have been taken from this Division's unpublished opinion, *People v. Amaya* (January 26, 2016, G033029) [nonpub. opn.] (*Amaya*), which affirmed Amaya's convictions.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6 without substantive change.  (Stats. 2022, ch. 58, § 10.)  For clarity, we refer to the statute as section 1172.6 throughout the opinion.

The victim, Bobby Sayamontry, was a Laos Boys gang member. In mid-January 2022, he had an argument with Patti Temprasuet, the then-girlfriend of an 18th Street gang member called "Clumsy." The 18th Street gang sold illegal drugs. According to a witness, Temprasuet told Sayamontry, "You better pay me my money, or I'll break your leg," and then mumbled to herself, "I'll kill you." (*Amaya*, *supra*, G033029.)

On January 18, Temprasuet telephoned Sayamontry's home and told his sister that Amaya, who was an 18th Street gang member, would be coming to see him. Later that night, Amaya and a second man visited Sayamontry at his home. The three men then left together in Amaya's red car. Shortly afterwards, witnesses heard several gunshots at a park near Sayamontry's home. Two people jumped into a red-colored vehicle and the car "peel[ed] out." Sayamontry was found in the park; he had been shot and later died from his wounds. (*Amaya*, *supra*, G033029.)

A couple of weeks later, police found Amaya in a red Nissan. Amaya was carrying a loaded .357 revolver. Subsequent forensic testing determined this gun was the weapon used to kill Sayamontry. Also in the car was Zapien, who matched the physical description of the second man who had accompanied Amaya to Sayamontry's home. (*Amaya*, *supra*, G033029.)

Amaya and Zapien were tried jointly for Sayamontry's murder, among other offenses. Jason Mellor, pursuant to a plea agreement and with a grant of immunity as to certain charges, testified at trial that he overheard Amaya and Zapien "talking about if they did the right thing by handling business. They also talked about doing it for Patti, but actually doing it for Clumsy." According to Mellor, when he asked Zapien about the conversation, Zapien said "he took somebody out." The prosecutor asked Mellor if "'Zapien told you that he shot the victim *because* [Amaya] did not have the heart to do it?' (Emphasis added.) Mellor answered affirmatively." (*Amaya*, *supra*, G033029.)

3

## II.     *Jury Instructions and Conviction*

On the murder count against Amaya, the jury was instructed on two possible theories of liability: (1) direct aiding and abetting (CALJIC No. 3.01); and (2) an uncharged offense of conspiracy to commit murder (CALJIC No. 6.10.5).  Although requested by the People, the trial court refused to give the instruction on aiding and abetting under the natural and probable consequences.  (CALJIC No. 3.02.)

A jury found Amaya guilty of first degree murder of Sayamontry and other offenses not relevant here.[3]  As described above, the jury found true the gang-murder special circumstance allegation, the criminal street gang sentencing enhancement, and the vicarious gang-related firearm enhancement.  The jury, however, did not find true the allegation Amaya discharged a firearm causing death.  (§ 12022.53, subd. (d).)  The trial court sentenced Amaya to life in prison without the possibility of parole for the murder, consecutive to a term of 25 years to life for the vicarious firearm enhancement, and stayed sentencing on the gang enhancement.  This court affirmed the conviction, with minor sentence modifications.  (*Amaya*, *supra*, G033029.)

## III.     *Resentencing Proceedings*

In March 2022, Amaya filed a petition for resentencing under section 1172.6.  The trial court found him ineligible for relief as a matter of law and denied the petition.  The court noted "[t]he jury was instructed on the law defining murder" and the related special circumstance allegation and enhancements based on Amaya's role "as a direct aider and abettor and/or co-conspirator" to murder, and not on "any theory of liability for murder requiring that malice be imputed to him."  The court reasoned, "In finding [Amaya] guilty of special circumstances first degree murder, the jury necessarily found [he] acted with the intent to kill."  Amaya timely appealed.

---

[3]        The procedural history of Zapien's convictions can be found in this Division's unpublished opinion, *People v. Zapien* (February 14, 2016, G032835) [nonpub. opn.].

4

Amaya contends the trial court erred in finding him ineligible for section 1172.6 relief as a matter of law. Specifically he argues the jury instructions on conspiracy allowed the jury to convict him under a now-invalid theory that imputes malice to him solely based on his participation in a crime. We disagree.

"Section 1172.6 allows individuals to petition for relief if they were convicted of murder under theories invalidated by Senate Bill No. 1437. [Citations.] With the enactment of Senate Bill 1437, the Legislature abolished the natural and probable consequences doctrine of murder liability." (*People v. Pittman* (2023) 96 Cal.App.5th 400, 413.) If the petitioner makes a prima facie showing of entitlement to relief, the trial court must issue an Order to Show Cause and hold an evidentiary hearing to decide whether to vacate the murder conviction, recall the sentence, and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c) & (d)(1).) But if the record of conviction demonstrates a petitioner is ineligible for relief as a matter of law, a court may summarily deny the petition. (*People v. Lewis* (2021) 11 Cal.5th 952, 970–972.) Where a court summarily denies the petition, our review is de novo. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

Here, the jury was instructed on two possible theories of murder liability. Both theories remain valid. "Senate Bill 1437 d[id] not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*People v. Gentile* (2020) 10 Cal.5th 830, 848.) And because a conviction of conspiracy to commit murder requires a finding of intent to kill (*People v. Medrano* (2021) 68 Cal.App.5th 177, 183 (*Medrano*)), a defendant so convicted is not eligible for resentencing under section 1172.6 as a matter of law (*People v. Whitson* (2022) 79 Cal.App.5th 22, 34–36).

Amaya argues *Medrano* is factually distinguishable because the jury in *Medrano* convicted the defendant of conspiracy to murder, whereas the jury here was

5

instructed it could convict Amaya of murder based on an uncharged theory of conspiracy to murder. We fail to see how this distinction makes a difference. "'"[A]ll conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder."'" (*Medrano*, *supra*, 68 Cal.App.5th at p. 183, quoting *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 641.) Here, the jury was instructed that murder requires a finding of malice aforethought. And the conspiracy instruction required the jury to find "an agreement between two or more persons with the specific intent to agree to commit the crime of murder, and with the further specific intent to commit that crime, followed by an overt act committed . . . by one or more of the parties for the purpose of accomplishing the object of the agreement." (CALJIC No. 6.10.5) Had the jury relied on the conspiracy theory to find Amaya guilty of murder, the jury would have necessarily found the requisite intent to kill.

In his reply brief, Amaya argues for the first time that "[t]he facts of the case established that there was an underlying conspiracy to commit extortion." He bases this extortion theory on the inference Temprasuet asked Amaya and Zapien to collect a drug debt from Sayamontry. Although Amaya acknowledges "[n]o one highlighted or discussed the extortion conspiracy during the trial," Amaya claims he "could have been convicted of murder if the jury had concluded that murder was a natural and probable consequence of [his] participation in the extortion conspiracy." We reject this argument as pure speculation. The jury was not instructed on a theory of conspiracy to commit extortion, but a conspiracy to commit murder. We must presume the jury followed its instructions. (*People v. McKinnon* (2011) 52 Cal.4th 610, 670.)

Finally, nothing in the Supreme Court's recent decision in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*) changes our conclusion that Amaya is ineligible for relief as a matter of law. In *Curiel*, the prosecution argued Curiel was guilty of murder under the natural and probable consequences doctrine. (*Id.* at p. 445.) No such instruction was given in Amaya's case. Instead, the jury was instructed on direct aiding and abetting

6

murder and conspiracy to commit murder.  Because the jury convicted Amaya of murder under one of these theories, not under the natural and probable consequences doctrine, he is ineligible for relief as a matter of law.[4]

## DISPOSITION

The order denying the section 1172.6 petition is affirmed.


DELANEY, J.

WE CONCUR:


MOORE, ACTING P. J.


MOTOIKE, J.

---

[4] Given our conclusion, we need not consider the parties' arguments on whether the jury's true finding on the gang-murder special circumstance allegation makes Amaya ineligible as a matter of law for section 1172.6 relief.

7