[Crim. No. 2759. Second Appellate District, Division One.—November 13, 1935.]

THE PEOPLE, Respondent, v. GEORGE HOWARD Mc-GILL, Appellant.

Gladys Towles Root for Appellant.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

HOUSER, P. J.—From each of two judgments of conviction of the crime of grand theft and one judgment of conviction of the crime of forgery that were rendered against him, as well as from an order by which his motion for new trial was denied, appellant has appealed to this court.

The principal point presented by appellant as affording a sufficient reason for an order by this court whereby said judgments would be reversed and the order for new trial would be granted, is that, although the offenses of which defendant was convicted were committed within this state in 1928, the complaint that supplied the foundation for his conviction was not filed until seven years thereafter, or in 1935; and that as a consequence, at the time when the action was commenced against defendant, the statute of limitations had run against each of such offenses; and in the premises, that the trial court had no jurisdiction either to try the action or to pronounce either of said judgments.

Appellant directs attention to the provisions of section 800 of the Penal Code, which provides that:

"An indictment for any other felony than murder, the embezzlement of public money, or the falsification of public records, must be found, or an information filed, within three years after its commission."

On the part of respondent it is urged that the language of section 802 of the same code presents an insuperable obstacle to the legal conclusion suggested by appellant. That statute is as follows:

"If, when the offense is committed, the defendant is out of the state, the indictment may be found or an information filed within the term herein limited after his coming within the state, and no time during which the defendant is not an

inhabitant of, or usually resident within this state, is part of the limitation."

An examination of the pertinent language of the two statutes discloses the situation that by the provisions of section 800, the offenses of which defendant was convicted apparently were "outlawed"; whereas, assuming that the last clause in section 802 is applicable, and that during at least four years of the seven years that elapsed between the dates of the alleged commission of the several respective crimes of which defendant was accused, and the date of the filing of the complaint, he was "not an inhabitant of, or usually resident within this state", the limitation of time within which the complaint must have been filed against defendant did not become effective.

Although on consideration not only of the language employed in section 802, but as well its punctuation, and the separation of section 802 from section 800, it may be argued that the concluding clause of section 802, with reference to the limitation of time for the commencement of an action, refers to the condition only therein specified, to wit, that "when the offense is committed, the defendant is out of the state"; and that the "exception" has no general application. In that regard, in the case of *State* v. *Clemens,* 40 Mont. 567 [107 Pac. 896], it was held, in effect, that the provisions of the Montana statute (which is identical with section 802 of our Penal Code) did not apply to a prosecution for an offense that was committed by the defendant while he was a resident of the state, but who afterward departed therefrom. In part, the Montana court said: "We think that the concluding words of section 9029, quoted above, are to be read with reference to the subject treated in the section, and that they apply only to a defendant who was not within the state when the crime with which he is charged was committed, and that they do not have any reference to a defendant who commits a crime while within this state, and afterwards leaves the state. . . . The mere fact that a defendant is absent from the state does not constitute any justification or excuse for delay in filing an information against him, particularly in view of our very liberal rules applicable in extradition proceedings."

However, in this state, upon presentation of the question to the Supreme Court in the case of *People* v. *Montejo,* 18 Cal. 38, so little weight was accorded to a suggestion that the ex-

ception to which reference has been had applied only to an offense that had been committed by a defendant "out of the state", that it was summarily disposed of by the declaration of the court that, "We think it clear that this provision (now section 802, Penal Code), as well includes the case of the defendant leaving the state after the commission of the crime as the case of his absence at the time of its perpetration, and that it applies to all offenses."

Prior to the ruling in that case, in *People* v. *Miller*, 12 Cal. 291, 295, it was declared that, "It is true that the statute of limitations excludes from computation the time the defendant may be out of the state, but the rule is, that this exception must be stated in the pleading. . . . "

On the same point, in the case of *People* v. *Newell*, 192 Cal. 659, 669 [221 Pac. 622], it was said:

"The next point is that the information was not filed within three years after the alleged commission of the offense (sec. 800, Pen. Code). It does not appear whether this was made a ground of demurrer or was otherwise brought to the attention of the lower court. However, the information alleges that the offense was committed on January 22, 1919, some three years and nine days before the filing of the information. But the information also alleges that on or about October 5, 1921, appellant fled from the state of California to the republic of Mexico, and that he remained outside of the jurisdiction of the court continuously until on or about November 28, 1921—a period of one month and twenty-three days. Evidence was received tending to support the allegations of absence from the state, and there is no foundation, therefore, for appellant's claim that the statute of limitations had run against the charge."

In *People* v. *Cheaney*, 111 Cal. App. 55, 58 [295 Pac. 84], the question was treated in the following manner:

" . . . While the information was filed about three years and sixty-two days after the commission of the crime, it was pleaded and stipulated that the defendant was absent from and outside the boundaries of the state from July 8, 1928, to October 11, 1928, or a period more than three months. The claim that the statute of limitations had run against the charge is without foundation."

Notwithstanding the meager reasoning that has been bestowed by the courts upon that which would seem to deserve

more careful attention, the conclusion would seem to be definite to the effect that the limitation on the time within which a criminal action may be instituted against a person after a given (ordinary) offense is alleged to have been committed by him at a time when he was either within or without the state is extended for a period equal to that during which the defendant in such action has not been "an inhabitant of, or usually resident within this state"; from which it follows that the point upon which appellant relies in that regard cannot be sustained.

■ Appellant also contends that "the burden of proof was upon the state to prove that the defendant was absent from the state. The People failed to establish this burden of proof beyond a reasonable doubt and to a moral certainty." In that connection it would appear to be the rule that, in circumstances such as are here presented, the duty devolves upon the People both to allege and to prove the fact of defendant's absence from the state for a period of time sufficient to prevent the full operation of the bar to the prosecution of the action. (*State* v. *Bilboa*, 38 Idaho, 92 [213 Pac. 1025, 222 Pac. 785]; *State* v. *Steensland*, 33 Idaho, 529 [195 Pac. 1080, 13 A. L. R. 1442]; *People* v. *Miller*, 12 Cal. 291; and see generally monographic note, 13 A. L. R. 1449; 16 Cor. Jur. 530; 37 Cor. Jur. 1243 et seq.; 4 Wigmore on Evidence, p. 3586.) But it is to be noted that none of such authorities goes to the length of declaring that the burden of proof requires that the absence of defendant from the state must be established beyond a reasonable doubt. As a general rule, as far as this state is concerned, the doctrine of reasonable doubt extends to evidence by which "every material issue" of the *corpus delicti* is sought to be proved. (8 Cal. Jur. 182.) However, it should be clear that the facts which prove the existence of the *corpus delicti* are entirely distinct and separate from those by which the liability of the defendant to be prosecuted for the commission of the crime are sought to be established; and that, although the right to maintain the action is an essential element in the final power to pronounce judgment, that element constitutes no part of the crime itself.

Section 1102 of the Penal Code contains the provision that "The rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided in this

code." And by subdivision 5, section 2061, of the Code of Civil Procedure, it is provided, that in a civil action "the decision must be made according to the preponderance of evidence"; but that in criminal cases "guilt must be established beyond reasonable doubt": It will thus be noted that in a criminal action the burden is placed upon the people to establish beyond a reasonable doubt the "guilt" only of the defendant therein; which leaves issues which do not particularly relate to his guilt "to be made according to the preponderance of evidence".

Without here attempting to set forth a *résumé* of the evidence that was presented by the respective parties on the trial of the action, it may suffice to state that, although the testimony given by defendant and his wife in substance was that, except for a very short period of time, he was not "out of the state", the evidence produced by the People which consisted largely of indirect evidence, such as fruitless searches made of different county registrations of voters, of several different city and telephone directories, and of many and various unsuccessful efforts made by different respective officers to locate defendant within this state, together with sundry extrajudicial admissions made by defendant regarding his prolonged and practically continuous absence from the state, was sufficient to create a conflict in the evidence on the issue before the court. In any event, since in the circumstances the jury determined the conflict in the evidence against the testimony of defendant and his witnesses, its conclusion is binding upon this court. ▄ Furthermore, the record herein discloses the fact that at no time during the trial of the action did defendant request that the court instruct the jury regarding the particular issue which he now presents to this court for its determination. In such circumstances, defendant has no right to complain. (8 Cal. Jur. 309 et seq.)

▄ However, appellant predicates prejudicial error upon the fact that the trial court refused to admit evidence offered by defendant that consisted of "an envelope addressed to George Howard McGill, marked 'Los Angeles' and the other side stamped 'Santa Maria'." But even conceding that such offered evidence might have been relevant and admissible, nevertheless, its effect could have been but slight and at most cumulative of that already introduced by defendant. Consid-

ering the rejected evidence, it is apparent that if it had been admitted and thereafter given due weight by the jury, the verdict would not have been thereby affected.

Finally, appellant contends that the trial court erred to defendant's prejudice in refusing to permit a certain witness to testify as to his opinion regarding the value of a part of the property that was involved in one of the charges of grand theft. But a reading of the testimony given by such witness with respect to his qualifications as an expert on value of the property in question, clearly establishes the conclusion that the trial court was right in its ruling in that regard.

The judgments and the order by which defendant's motion for a new trial was denied are, and each of them is, affirmed.

York, J., concurred.

Doran, J., being disqualified, does not participate in this decision.