[Crim. No. 1660.   Third Appellate District.—March 31, 1939.]

THE PEOPLE, Respondent, v. C. C. MONTGOMERY, Appellant.

44

Charles Kasch, John B. Harman and Wayne P. Burke for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

TUTTLE, J.—The defendant in this case was convicted of a felony, to wit: A violation of section 484 of the Penal Code, in that, in the county of Mendocino, he feloniously stole, led and drove away a steer which was the personal property of the Caspar Lumber Company, a corporation. It was the contention of the defendant at the trial that he had permission from the company to take and sell the steer. The animal was taken from the slaughter-house of the Caspar Lumber Company, which is about one-quarter of a mile from Caspar, and transported to Fort Bragg by appellant.

The petition for rehearing was granted in the above-entitled cause in order that the court might give further consideration to the question of the proof of venue. It is ear-

nestly contended by the attorney-general that there is sufficient direct evidence in the record, exclusive of that derived through judicial knowledge, to meet the requirements of the law in the matter of the establishment of the fact that the crime in question was committed in Mendocino County. A reexamination of the record, in our opinion, supports this contention. The testimony of defendant relative to this matter, and upon which the attorney-general relies, is as follows:

"Q. How long have you been a resident of Mendocino County, Mr. Montgomery? A. Since I was four years old. Q. Where were you born? A. San Francisco. Q. And approximately how many years have you lived in Mendocino county? A. Well, I will be 50 years old next February. Q. For the last 46 years, then, you have been a resident of Mendocino county? A. Yes, sir, barring a year or so I was in Livermore. Q. *And during that 46 years where have you resided in* Mendocino County? A. Fort Bragg or Caspar, or in that neighborhood. Q. Either one of those places for the last 46 years? A. Practically; been away a few months now and then, but not long. Q. Where have you resided for the last fifteen years? A. Caspar Woods, known as Camp 6'. . . . Q. And whose property do you reside on, or have you been residing on? A. I have resided on the Caspar property; mother lives on the Union Lumber Company's property. Q. What has been your occupation, Mr. Montgomery, for the last fifteen or eighteen years? A. Raising cattle and getting out split stuff for the Caspar Lumber Company. Part of the time for the Union Lumber Company, but mostly, Caspar."

We are satisfied that from the foregoing the jury could reasonably infer that both Fort Bragg and Caspar were in Mendocino County. "The State gives no assurance to its feloniously insubordinate citizens that the venue of their crimes will be fixed beyond a reasonable doubt; that doctrine applies only to the issue of guilt. (*People* v. *McGill*, 10 Cal. App. (2d) 155 [51 Pac. (2d) 433]; Underhill on Criminal Evidence, vol. 1, sec. 36, p. 45.) The defendant and appellant, therefore, is in no position to complain because the location of the offense was not established to a degree of certainty more to his liking." (*People* v. *Carter*, 10 Cal. App. (2d) 387–389 [52 Pac. (2d) 294].)

■ It is next contended that the trial court erred in sustaining an objection to a question propounded by his counsel during the cross-examination of witness Biaggi, for the Peo-

ple. This question was in the following language: ''Q. Did you ever discuss with Mr. Montgomery the fact that any other steers had disappeared or moved off the property?'' The district attorney objected to the question on the ground that it was incompetent, irrelevant and immaterial, and not proper recross-examination. This objection was sustained. Arguing at the trial in support of its admissibility, counsel for appellant contended that he desired to produce evidence tending to show that the relations between appellant and Biaggi were not pleasant. Assuming that the cross-examination of the witness was unduly restricted, we do not believe that a sufficient showing has been made which would indicate that there was any serious prejudice to defendant's case arising out of the incident. Furthermore, the question would not seem to call for an answer which would have the effect of showing any unpleasant relationship between defendant and the witness. The contention is without merit.

It is urged that the trial court erred in striking out the answer of appellant to a question on cross-examination. It appears to be a fact, and was admitted by defendant, that prior to the trial he had given a witness named Stickney an account of his taking the steer, which was not the truth. While being cross-examined by the district attorney, appellant was asked: ''Why didn't you tell Mr. Stickney the true story?'' And he answered: ''I thought I could catch Harry Wakerly, and if I told Mr. Stickney the true story, he would stop me, and I first wanted to get out of the Caspar Woods.'' This answer was stricken out by the court. We are at a loss to see how any prejudice resulted by reason of this ruling, on account of the fact that after the incident mentioned, appellat was reexamined by his counsel regarding the incident, as follows:

''Q. Now, do you recall that you were asked on cross-examination about the conversation taking place with Mr. Lilley, between yourself and Mr. Lilley? A. Ten days ago. Q. Mr. Lilley said that you should not have told Mr. Stickney a lie? A. I don't know that I said that; I said, 'maybe I lied to him, maybe I didn't, maybe I had to lie to him, Jim'. Q. *Why did you have to lie to him?* A. Well, I thought I could gain by lying to him, if I lied to him. I don't think I admitted I lied, that I did lie to him, exactly.''

In the above portions of the redirect examination, the appellant testified that he told a man named Jim Lilley, in relation to his false story to Mr. Wakerly, that ''maybe I had to lie to him, Jim''. Thereupon, counsel said: ''Why did you have to lie to him?'' Which question was in effect exactly the same question propounded to him by the district attorney, and as the appellant was permitted to answer the question when it was propounded to him by his counsel on redirect examination, there could be no prejudice to him because the answer was stricken in the first instance.

It is further contended that the trial court erred in striking out the entire testimony of the witness Ernest Thompson, for the defendant. This witness testified that he was employed to search for cattle by the Caspar Lumber Company. He stated that on one occasion he ran across seven or eight steers; he noticed that one had fresh marks on its ears, but he could not identify or describe the mark; it was a red steer—a little white. The witness testified that after he saw the steer with the fresh earmark, he communicated the discovery to appellant. In view of the fact that defendant, on the witness stand, admitted that he took a steer with certain earmarks, from the property of the Caspar Lumber Company, and later sold it, we do not see how the evidence of the witness was in any respect material to the case; it was simply evidence that the witness, at some time preceding the trial, on an unmentioned date, had seen another steer roaming the woods, but he could not identify it. The trial court properly struck out this testimony and admonished the jury to disregard it.

A further ground for reversal is urged, arising out of the action of the trial court in overruling an objection of appellant to the testimony of the witness Rucker. This witness was called by the prosecution, and identified the brand on the steer which was taken by the appellant. It is contended that he was called as an expert witness, and that the evidence in question was not of the character which called for expert testimony. The objection is without any merit whatever, as the witness apparently was not called as an expert and he simply described the marks which he saw on this steer.

The contention is made that the district attorney was guilty of prejudicial misconduct. In cross-examining the de-

fendant with respect to whether or not he had taken a steer from the Ballassi ranch, the appellant stated, by way of answer to a question: "I have got several cattle off that ranch." Thereupon, the district attorney asked the following question: "Yes, but I mean legitimately?" The foregoing question of the district attorney was assigned as misconduct, but no request was made that the court instruct the jury to disregard it. Throughout the entire trial the district attorney conducted the case fairly and with due regard to the rights of the defendant, and this was the only occasion where his conduct was questioned. The purport of this question was that it was desired to know whether or not the steer was taken from the Ballassi ranch with the permission of the owner. This was a legitimate inquiry, although we do not particularly approve of the language used in order to ascertain the fact. There is nothing in the record which would lead us to believe that the district attorney asked the question in bad faith or with a view to prejudicing the rights of the defendant. The contention is without merit.

Finally, it is contended that the length of time the jury took for its deliberations, to wit: 9:38 A. M. to 8:53 P. M., would indicate the seriousness and prejudicial character of the alleged errors relied upon for a reversal. The question as to what factors motivate a jury in their deliberations is one of pure speculation. We are unable to adopt the view of appellant that any reasonable inference, either in favor of, or against appellant, could be drawn from the fact that the jury took a considerable length of time in which to reach a conclusion.

The defendant was given a fair trial and no prejudicial error appears in the record.

It is therefore ordered that the judgment and order be affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 27, 1939.