[Civ. No. 1112. Fifth Dist. Jan. 16, 1970.]

In re LINDA D., a Person Coming Under the Juvenile Court Law.
MERLIN D. WINTER, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
LINDA D., Defendant and Appellant.

## COUNSEL

Earl J. Dunn, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Nelson P. Kempsky and Marjory Winston Parker, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

GARGANO, J.—After a hearing before the Juvenile Court of Tulare County, Linda Darlene D., who was then 18 years of age, was declared a ward of the court pursuant to the provisions of section 602 of the Welfare and Institutions Code and released to live with her mother. The court found that Linda was present in a place where marijuana was being smoked, with knowledge that such activity was occurring, in violation of section 11556 of the Health and Safety Code. She appeals from the court's order.

On January 25, 1968, Mrs. Florence Mohler gave Kenneth Inman of the Tulare County Sheriff's Office a plastic bag containing a green leafy substance which appeared to be marijuana. She told him that the bag had been removed from her son's car. Then Mrs. Mohler gave the officer permission to search her house at 903 South Hill Street in Porterville and to "do whatever necessary to clarify the matter."

That night Inman and several fellow officers from the Tulare County Sheriff's Office converged at the Mohler home in Porterville. The officers knocked, and Mrs. Mohler's son David came to the door. A party was in progress, and the living room was very dark. However, when told that his mother had given the officers written permission to enter the house and look around, David let the officers in.

As the officers stepped into the house, they detected a sweet pungent odor which smelled like burning marijuana emanating from the living room. In addition, the officers heard a toilet flush at the rear of the house, and when they entered the bathroom the water was still swirling in the toilet bowl; what appeared to be cigarette papers were seen lying on the bottom of the bowl; a green leafy substance, ashes and seeds were also seen along the sides of the bowl and in the water. Then, the officers searched the house and found a dismantled oriental smoking pipe and a plastic bag containing a green material; the green material was marijuana. The officers also removed a match box containing 11 partially smoked marijuana cigarettes and some loose leafy material from one of

the boys. Marijuana seeds and debris were found in the pocket of another boy's shirt.

Appellant was arrested and brought to juvenile hall. A few hours later she signed a written statement admitting that she knew what marijuana cigarettes looked like because she had smoked one sometime before. She also stated that while she was at the Mohler home she saw one marijuana cigarette being passed around to different people.

■ Appellant's first contention for reversal does not reach the merits of her appeal. Instead, it attacks the lower court's jurisdiction, because the petition to have her declared a ward of the juvenile court was not verified as required by Welfare and Institutions Code section 656, and because the record does not show that a copy of the petition and a notice of the hearing was served upon appellant's father who lives in Salem, Missouri.

These jurisdictional objections have no merit on this appeal. Appellant did not challenge the unverified petition in the court below, and hence cannot raise the issue for the first time on appeal. ■ It is the rule that the failure to verify a petition to have a minor declared a ward of the juvenile court is a defect in the pleading which does not go to the court's jurisdiction and must be raised prior to the hearing or it is waived (*In re Staser*, 84 Cal.App.2d 746, 752 [191 P.2d 791]). ■ Moreover, while it is true that the record does not show that appellant's father was served with a copy of the petition and a notice of the hearing, it does not affirmatively negate the possibility that he was in fact served. Thus, we must presume that the juvenile court clerk performed his official duty under Welfare and Institutions Code section 658 and served all persons entitled to notice (Evid. Code, § 664). The document relating to the service of notice was not made a part of the record on appeal pursuant to rule 33(b) of the California Rules of Court or otherwise. ■ It is settled that matters not presented by the record cannot be considered on appeal (*Gantner* v. *Gantner*, 39 Cal.2d 272, 278 [246 P.2d 923]; *People* v. *Schulze*, 169 Cal.App.2d 430 [337 P.2d 109]). ■ We note, however, that arguably appellant's father was entitled to receive notice, and if he was not served the ommission was jurisdictional and can be raised by writ of habeas corpus (*In re Moilanen*, 104 Cal.App.2d 835 [233 P.2d 91]).

■ The essence of appellant's second contention is that the evidence was insufficient to justify the court's order declaring her a ward of the juvenile court. Briefly, appellant suggests that respondent had the burden of proving each element of the corpus delicti of the offense charged by a preponderance of the evidence and that it failed to meet this burden of proof if appellant's inculpatory statements are ignored.

It is of course true that respondent had the burden of proving every element of the corpus delicti of the offense charged against appellant without resorting to her inculpatory statements (*People* v. *Mehaffey,* 32 Cal.2d 535 [197 P.2d 12]; *Iiams* v. *Superior Court,* 236 Cal.App.2d 80 [45 Cal.Rptr. 627]). Nevertheless, the corpus delicti of an offense may be proved by circumstantial evidence and any reasonable inference which may be drawn therefrom (*People* v. *Ives,* 17 Cal.2d 459 [110 P.2d 408]). And, the quantum of proof required is not by a preponderance of the evidence as respondent suggests; a slight or prima facie showing is sufficient (*People* v. *Lara,* 67 Cal.2d 365 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Amaya,* 40 Cal.2d 70 [251 P.2d 324]).

With these rules in mind, we conclude that respondent's evidence, although admittedly slight in some instances, established every element of the corpus delicti of the crime charged, apart from any extrajudicial statement made by appellant. First, that there was marijuana present in the Mohler home and on some of the guests was established by the officers' testimony that they found a package of marijuana in a clothes hamper, 11 partially smoked marijuana cigarettes on one boy, and marijuana seeds and debris in the pocket of another boy's shirt. Second, that marijuana was being used when the officers entered the house was established by their testimony that the odor of burning marijuana was emanating from the living room, and that when they inspected the toilet in which the water was running they saw what appeared to be cigarette papers lying on the bottom of the bowl and a green leafy substance, ashes and seeds along the sides of the bowl and in the water. Third, that appellant was in the place where the marijuana was being used, with knowledge that the activity was occurring, was established by the fact that she was in the darkened living room with other teenagers at a late hour and the living room was filled with the odor of burning marijuana.

In rebuttal, appellant argues that because nothing burning was found in the living room, and because it is common knowledge that odors may drift from one area to another, respondent did not prove that the marijuana was being smoked in appellant's presence; she asserts that the unlawful activity could have been going on in the bathroom where the cigarette papers were observed. This argument goes to the weight, not the sufficiency, of the evidence. Appellant also points to the fact that although several officers testified that they smelled burning marijuana, they candidly admitted that they could have been mistaken. Nevertheless, Detective Sergeant James Johnson stated that he had experimented with the burning of marijuana at the Bureau of Narcotics Enforcement laboratory in Fresno, and that it smelled sweet and pungent and had a sticky, heavy type of odor readily detectible from the smell of burning tobacco. The sergeant

said he detected such an odor when he entered the living room of the Mohler home.

██ Appellant's final contention is that her inculpatory statements were admitted into evidence in violation of her constitutional rights as articulated in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. Briefly, after appellant was brought to the juvenile hall, and before she was questioned, she was informed of her constitutional rights by Rozella Cheek, a deputy with the Tulare County Sheriff's Office. Miss Cheek read the rights to appellant from a card and then instructed appellant to read the card for herself. Afterward, the deputy asked appellant if she understood, and in reply appellant signed a waiver.

██ It is settled that a minor, like an adult, is protected by the privilege against self-incrimination and is entitled to have counsel present during custodial interrogation (*In re Gault,* 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]). It is also settled that a minor may waive these rights, if the waiver is knowingly and intelligently made (*People* v. *Lara, supra,* 67 Cal.2d 365). ██ But, whether a minor has knowingly and intelligently waived his rights depends upon the minor's age, the degree of his intelligence, his familiarity with the law or legal procedures, the method and duration of the interrogation and similar factors. In a word, whether a minor has knowingly and intelligently waived his rights depends upon the "totality of the circumstances," and each case must be decided on its own facts (*In re Dennis M.,* 70 Cal.2d 444, 465 [75 Cal.Rptr. 1, 450 P.2d 296]).

██ With these principles in mind, we conclude that the trial judge's decision that appellant knowingly and intelligently waived her constitutional rights before she made the inculpatory statements which were admitted into evidence, is not palpably erroneous (*People* v. *Stafford,* 240 Cal.App.2d 422 [49 Cal.Rptr. 598]). Appellant was brought to the juvenile hall early in the morning of January 26, and interviewed by Rozella Cheek a few hours later. At the time of her interview, appellant was not an immature child of tender years. She was an intelligent girl almost 18 years old and, according to Miss Cheek, was alert and understood very well. The "*Miranda* warning" which the matron read from the card was in plain language; the card stated:

"1. You have the right to remain silent.

2. Anything you say can and will be used against you in a court of law.

3. You have the right to talk to a lawyer before you are questioned, and have him present with you while you are being questioned.

4. If you cannot afford to hire a lawyer and if you want one, you have the right to have a lawyer appointed to represent you before any questioning."

And, significantly, when the deputy asked appellant if she understood her rights, appellant replied by signing the waiver, clearly indicating that she did. The waiver was also in plain language and read as follows:

"1. I know that I have the right to remain silent.

2. I know that anything I say can and will be used against me in a court of law.

3. I know that I have the right to talk to a lawyer before I am questioned and to have him present while I am being questioned.

4. I know that if I cannot afford to hire a lawyer and if I want one, I have the right to have a lawyer appointed to represent me before any questioning."

The order is affirmed.

Stone, P. J., and Coakley, J., concurred.