[Crim. No. 12392. First Dist., Div. One. Nov. 19, 1974.]

THE PEOPLE, Plaintiff and Appellant, v.
JOSEPH DEAN EITZEN, Defendant and Respondent.

**COUNSEL**

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Timothy A. Reardon and Alvin J. Knudson, Deputy Attorneys General, for Plaintiff and Appellant.

Clarence B. Knight for Defendant and Respondent.

## Opinion

**SIMS, J.**—The People have appealed (Pen. Code, § 1238, subd. (a)(1)) from a decision granting the defendant's motion to dismiss pursuant to Penal Code section 995, four counts of a six-count amended information. It is concluded that the three issues raised by the parties must be resolved as follows: the prosecutor was not precluded from charging four counts of grand theft because the magistrate failed to hold the defendant to answer three of those charges; the uncontradicted evidence produced at the preliminary hearing was sufficient to show reasonable and probable cause to hold the defendant to answer the four charges in the amended information which were dismissed; and the evidence does not show as a matter of law that the charges were barred by the statute of limitations. The dismissal of the four counts must be reversed.

At the preliminary examination it was stipulated that the defendant, Joseph Eitzen, was employed as a deputy sheriff in the San Mateo County sheriff's office from July 16, 1962, until September 23, 1969, and that during the period from his first appointment until March 1, 1968, he was assigned badge number 254, and thereafter until he terminated his employment, number 239.[1]

The prosecutor produced four firearms capable of being concealed upon the person, each of which was marked with the initials "J.E." and the numbers "54."[2]

Exhibit 4, a Hy Hunter .22 caliber derringer, serial number 19019, was identified by its former owner as a weapon which was taken from him by a San Mateo County deputy sheriff when he was arrested on September 24, 1966, for discharging a weapon within the city limits of Redwood

---

[1]The prosecutor first gave the numbers as 2254 and 2239, respectively, but at the suggestion of the defendant the first digits were deleted because the four digit numbers represented radio call numbers not badge numbers. In the superior court it was agreed that only the last two digits were the numbers on the officer's badge.

[2]At the hearing in the superior court the prosecutor filed a request that the court take judicial notice "that the letters JE and numbers 54 inscribed on the preliminary hearing, exhibits 4, 5, 6 and 7 appear to be a typical evidence identification mark of a police officer indicating his initials and badge number." A declaration to that effect was offered and the court in its written decision and minute order recited, "We have taken judicial notice of the declaration of Robert Cooper being Exhibit 'H' as well as the rest of the exhibits. The defendant, if he desires, may produce more evidence as to Exhibit 'H' or have the opportunity of examining Mr. Cooper in court." It is unnecessary to consider the propriety of the consideration of the declaration. The existence of the markings is admitted and such inferences as they support may be drawn without assistance from the declaration.

City. A preliminary hearing was held on that charge and a second charge of carrying a concealed weapon, and he was convicted of the latter charge. He saw the gun in court at his preliminary hearing, he knew that it would be confiscated, did not care what happened to it, and never made any request or claim to get his gun back. He never sold or transferred the gun to the defendant or anyone else.

Exhibit 5, a Iver Johnson .38 caliber revolver serial number G 7785, was identified as a weapon which was seized from a vehicle in connection with an arrest effected November 17, 1966. The officer who made the arrest and seized the revolver indicated that a property receipt with identifying numbers had been prepared for the weapon. He testified that he turned the gun over to the defendant as a deputy sheriff.

Exhibit 6, a Hy Hunter Frontier .22 caliber revolver, serial number 20248, was identified as a gun taken from a vehicle in connection with an arrest made August 6, 1966. The officer who seized the weapon testified that he placed the gun in the evidence locker of the sheriff's office and never saw it again.

Exhibit 7, a Sturm, Ruger & Company, Incorporated Black Hawk .357 caliber revolver, serial number 76684, was identified as a weapon seized from the person of an individual arrested September 18, 1966. The officer testifed it was placed in the evidence locker of the sheriff's office by his partner in effecting the arrest.

On October 7, 1972, pursuant to a search warrant issued the preceding day on an affidavit which disclosed that a confessed burglar had alleged that he sold stolen goods to the defendant, a search was made of defendant's residence. The officers discovered and seized a television set answering the description of that set forth in the search warrant. The search failed to turn up other items set forth in the warrant consisting of a man's gold Florentine diamond ring, an antique clock, a man's Omega yellow gold Florentine wrist watch, a Gorham sterling silver serving set, a Reed and Barton silver ice bucket, a yellow gold pocket watch and chain, and an antique, double barrel, side-by-side .410 caliber pistol with exposed hammers. In searching for these items an officer entered an unimproved portion of the basement where he observed a cabinet or dresser propped up against the wall near a concrete slab on which the heater was located. On opening the top drawer he observed four handguns. No other items were found in the cabinet. He examined them and took the serial numbers because he thought from the location in which they were discovered they

might be stolen guns.[3] The officer testified that all four guns, which were those described above, were subsequently seized on execution of a second search warrant. The record, however, which included the affidavit made to secure the second search warrant, indicates, and the parties so acknowledged in argument before the magistrate, that the serial numbers of the guns were checked during the course of the first search and the .357 caliber revolver, exhibit 7, was seized then, because information was relayed to the officer that the gun had been logged as evidence in a San Mateo County sheriff's office case, and because it was inscribed with the initials of the defendant, known to have been a former deputy sheriff, and numbers corresponding to his badge number.

The remaining weapons, exhibits 4, 5 and 6, were seized on October 17, 1972, pursuant to a search warrant issued and executed that day.

The confessed burglar testified that from February 1971 until August 1972 he saw the defendant frequently and discussed selling him stolen goods, such as jewelry, silverware, and fur coats. He testified he sold the defendant the items mentioned in the first search warrant, and that the defendant had told him that if he ran into any pistols that were good he would take them.

I

The preliminary examination was conducted upon an amended complaint which contained 10 counts, charging the following offenses: I, receiving the stolen television set in violation of section 496 of the Penal Code; II, receiving the stolen ring; III, theft of the .22 caliber derringer (exhibit 4) from the former owner in violation of subdivision 3 of section 496 of the Penal Code; IV, embezzlement of the same derringer from the former owner, and the county; V and VI, similar charges with respect to the .38 caliber revolver (exhibit 5); VII and VIII, similar charges with respect to the .22 caliber revolver (exhibit 6); and IX and X, similar charges with respect to the .357 caliber revolver. Each of counts III through

---

[3]Defendant objected that the officers had no right to examine or seize articles which bore no relationship to the articles described in the search warrant. The magistrate properly found that there was no illegal seizure in picking up the weapons, which were in plain sight as the result of an authorized search, to determine their make, serial numbers and caliber. (*People* v. *Roberts* (1956) 47 Cal.2d 374, 380 [303 P.2d 721]; and *People* v. *Superior Court* [*Aslan*] (1969) 2 Cal.App.3d 131, 135 [82 Cal. Rptr. 507].) Once it was established that the one weapon was a stolen item it was properly seized although not the subject of the first warrant. (*Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 147 [81 Cal.Rptr. 613, 460 P.2d 485].)

X contained an allegation reading "said offense having been discovered on or about October 7, 1972."

After hearing the evidence reviewed above the magistrate overruled the defendant's objections to the qualifications of the magistrate who issued the search warrants, and to the validity of the second search warrant and the evidence on which its issuance had been predicated (see fn. 3 above). On the merits he held the defendant to answer on the first four counts.

The prosecutor originally filed a 15-count information which charged the defendant with receiving the television and the ring (counts I and II), with one count of theft from the owner and two counts of embezzlement with respect to each of the four weapons (counts II through XIV), and one count of conspiracy with respect to the television (count XV). The defendant filed a demurrer to the information raising the statute of limitations, multiple statements of the same offense, and impropriety of the conspiracy count. Thereupon the People filed an amended information in which the three counts relating to each of the weapons were consolidated into one count of theft reading in effect, "That the said [defendant], on and between [November 11, 1966, or a later date] and September 23, 1969, . . . did wilfully, unlawfully and feloniously take the property of another consisting of a [description], a firearm, said offense having been discovered on or about October 7, 1972."

Defendant's demurrer, as applied to the amended information, was overruled and the matter was continued for argument on the defendant's motion to dismiss the theft and conspiracy counts pursuant to the provisions of section 995 of the Penal Code. The court's decision and order reads, "We find we must agree with the magistrate and grant defendant's motion as to Counts III, IV, V and VI. Further, the prosecution has not met its burden as to the statute of limitations. As to the conspiracy charge, it's highly technical; however, at this stage of the proceedings, it may stand."

■ Penal Code section 739 provides in relevant part, "When a defendant has been examined and committed, as provided in Section 872, it shall be the duty of the district attorney of the county in which the offense is triable to file in the superior court of that county within 15 days after the commitment, an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment *or any offense or offenses shown by the evidence taken before the magistrate to have been committed. . . .*" (Italics added.) These provisions authorize the prosecutor to charge any offense disclosed

by the evidence at the preliminary examination which is related to the charge for which the defendant has been held to answer even though the magistrate concluded impliedly or otherwise that the evidence did not show probable cause that such offense had been committed. (*Parks* v. *Superior Court* (1952) 38 Cal.2d 609, 613-614 [241 P.2d 521]; *People* v. *Zeihm* (1974) 40 Cal.App.3d 1085, 1089-1090 [115 Cal.Rptr. 528]; *People* v. *Duncan* (1974) 40 Cal.App.3d 940, 955 [115 Cal.Rptr. 699]; *Dudley* v. *Superior Court* (1974) 36 Cal.App.3d 977, 983-985 [111 Cal. Rptr. 797]; *Batts* v. *Superior Court* (1972) 23 Cal.App.3d 435, 440 [100 Cal.Rptr. 181]; *People* v. *Farley* (1971) 19 Cal.App.3d 215, 220-222 [96 Cal.Rptr. 478]; *People* v. *Horton* (1961) 191 Cal.App.2d 592, 597 [13 Cal.Rptr. 33]; and *People* v. *Warren* (1958) 163 Cal.App.2d 136, 141-142 [328 P.2d 858].)

In *Jones* v. *Superior Court* (1971) 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241], the court recognized the foregoing rule (4 Cal.3d at p. 665), but pointed out that the provisions were not "intended to allow the district attorney to ignore the magistrate's findings of *fact* and charge the defendant with an offense or offenses which the magistrate has expressly found never took place." (*Id.,* p. 666.) Defendant is not warranted in relying on *Jones* to support the decision of the superior court. The magistrate made no factual finding in this case. He merely concluded: "In connection with Counts V through X, the Court does not feel that the evidence presented at this hearing is sufficient to warrant a holding on those counts presently alleged." He endorsed the complaint, "(No holding CT V thru X)." The distinction is pointed out in *People* v. *Farley, supra,* as follows: ". . . we perceive the practical rule to be that in cases where the magistrate makes factual findings which are fatal to the asserted conclusion that a particular offense was committed, the district attorney may not recharge that offense in the information. A clear example of this would be where the magistrate expresses disbelief of a witness whose testimony is essential to the establishment of some element of the corpus delicti. [¶] Where, however, the magistrate either expressly or impliedly accepts the evidence and simply reaches an ultimate legal conclusion therefrom—i.e., whether or not such evidence adds up to reasonable cause that the offense had been committed—such conclusion is open to challenge by inclusion in the information which action is thereafter subject to attack in the superior court under Penal Code section 995, and ultimately to appellate review." (19 Cal.App.3d at p. 221. See also *People* v. *Zeihm, supra,* 40 Cal.App.3d 1085, 1089; and *Dudley* v. *Superior Court, supra,* 36 Cal.App.3d 977, 983-985.)

## II

It is, therefore, necessary to determine whether or not the evidence introduced at the preliminary hearing furnished "sufficient cause" to believe defendant guilty of not only the offense of which he was held to answer, but also the remaining three counts charged by the prosecutor and dismissed by the trial court. "The term 'sufficient cause' is generally equivalent to 'reasonable and probable cause,' that is, such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused [citation].     As we recently pointed out in *Taylor* v. *Superior Court,* 3 Cal.3d 578, 582 . . . , 'Of course, the probable cause test is not identical with the test which controls a jury . . . The jury must be convinced to a moral certainty and beyond a reasonable doubt of the existence of the crime charged in the information and of every essential element of that crime. But a magistrate conducting a preliminary examination must be convinced of only such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] In other words, "Evidence that will justify a prosecution need not be sufficient to support a conviction. . . .     An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. [Citations.]" ' " *(People* v. *Uhlemann* (1973) 9 Cal.3d 662, 667 [108 Cal.Rptr. 657, 511 P.2d 609]. See also *Dudley* v. *Superior Court, supra,* 36 Cal.App.3d 977, 982-983; and *People* v. *Riley* (1963) 217 Cal.App.2d 11, 15-16 [31 Cal.Rptr. 404].)

"Theft as defined in section 484, includes embezzlement, theft by trick and device, and theft by false pretenses. [Citations.]" *(People* v. *Riley, supra,* 217 Cal.App.2d 11, 17.) Accordingly the charges must be upheld if there is sufficient evidence of probable cause on any of the above theories. The corpus delicti of theft may be established by circumstantial evidence. (See *People* v. *Ives* (1941) 17 Cal.2d 459, 463 [110 P.2d 408]; and *In re Linda D.* (1970) 3 Cal.App.3d 567, 572 [83 Cal.Rptr. 544].) The magistrate apparently had no problem in finding that there was probable cause to hold the defendant for the theft of the .22 caliber derringer charged in counts III and IV, regarding which the former owner testified. He apparently felt that it was necessary for the People to prove ownership of the other weapons.[4] In this the judge was mistaken. "The

---

[4]The magistrate observed, "The problem . . . is for purposes of ownership for the theft sections, I question whether or not the county is in fact an owner of these weapons. Because theft is a crime against ownership, not against custody, of one

allegation in the information that appellants 'took the personal property of another', as that term is used in section 484 of the Penal Code, means property in the possession of another who is entitled as bailee, lien claimant, or otherwise, to retain possession thereof for some benefit or profit to himself to the exclusion of all others, rather than the absolute ownership, defined in section 679, Civil Code. If the proof established such right in the instant case, the offense of grand theft was properly pleaded." (*People* v. *Photo* (1941) 45 Cal.App.2d 345, 351 [114 P.2d 71]. See also *People* v. *Nelson* (1880) 56 Cal. 77, 82.)

In support of the ruling of the superior court, defendant points out that the transcript is devoid of evidence of the ownership, possession or whereabouts of the guns from 1966 until October of 1972. He claims that under the provisions of section 12028 of the Penal Code[5] a pistol or revolver can only be confiscated if carried as a concealed weapon (see § 12025), or if used in the commission of a felony. The statute also covers a firearm used in an attempt to commit a felony, and a firearm unlawfully used when the

type of [*sic*] another—which is all I see here, is some sort of custodial holding of these weapons by the county, and the only evidence I have in connection with actual ownership is from Mr. Murphy in Counts III and IV. I don't see any for the remaining Counts V through X, from the ownership question."

[5]During the period that the defendant was employed as a deputy sheriff section 12028 of the Penal Code provided as follows:

"(a) The unlawful concealed carrying upon the person or within the vehicle of the carrier of any of the weapons mentioned in Section 653k, 12020, or 12025 is a nuisance.

"(b) A firearm of any nature used in the commission of a felony, or an attempt to commit a felony, is, upon a conviction of the defendant, a nuisance.

"(c) Whenever a felony charge is reduced to a misdemeanor charge and a conviction is obtained based upon the unlawful use of a firearm, the weapon is a nuisance and shall be subject to destruction as provided in this section.

"(d) Any weapon described in subdivision (a), or, upon conviction of defendant, any weapon described in subdivision (b), shall be surrendered to the magistrate before whom the person is taken, except that in any city or county the weapons shall be surrendered to the head of the police or sheriff's department. The officers to whom the weapons are surrendered, except upon the certificate of a judge of a court of record, or of the district attorney of the county, that the preservation thereof is necessary or proper to the ends of justice, shall annually, between the 1st and 10th days of July, in each year, destroy the weapons or cause them to be destroyed to such extent that they shall be wholly and entirely ineffective and useless for the purpose for which they were manufactured. If any weapon has been stolen and is thereafter recovered from the thief or his transferee, it shall not be destroyed but shall be restored to the lawful owner, as soon as its use as evidence has been served, upon his identification of the weapon and proof of ownership." (Stats. 1963, ch. 1677, § 2, p. 3263.) In 1970 (Stats. 1970, ch. 1057, § 1, p. 1887, effective Nov. 23, 1970) the statute was amended and recast to provide for disposition by offering weapons of certain types for sale in lieu of destruction.

possessor is convicted of a misdemeanor as a reduced charge from a felony charge. (See fn. 5 above.) In any event, there was no evidence to show whether any of the persons arrested, other than the arrestee who testified, ever had a license to carry the weapon which was seized, or whether any of those persons were ever convicted of any offense, either felony or misdemeanor. Nor is there any evidence that any of the weapons was surrendered to the particular official—magistrate or head of the city police or county sheriff's department—designated in the statute. There was also no showing that any designated official—judge of a court of record or district attorney ordered the "preservation" (now "retention") of any of the weapons. Defendant concludes that therefore the record fails to show either that any of the weapons was properly confiscated (with the possible exception of exhibit 4), or that any was properly preserved or retained, or, if a stolen weapon that any was not properly restored to the channels of commerce by the return to its rightful owner under the provisions of section 12028, or so restored by sale under the 1970 amendment. He also points out that the weapons could have found their way back into private ownership under the provisions of section 12030.[6]

No evidence was offered to show whether or not any of the weapons had been delivered up, or turned over, under the provisions of section 12030, or whether the Bureau of Criminal Identification and Investigation had ever been notified of the retention of any of the weapons. Nor was any evidence offered to show that any weapon had been a stolen weapon, or, if so, that it had been returned to its lawful owner.

---

[6]During the period the defendant was employed as a deputy sheriff section 12030 provided as follows: "The officer having custody of any firearms which may be useful to the State Guard, the Coast Guard Auxiliary or to any military or naval agency of the Federal or State Government may upon the authority of the legislative body of the city, city and county, or county by which he is employed and the approval of the Adjutant General of the State deliver such firearms to the commanding officer of a unit of the State Guard, the Coast Guard Auxiliary or any other military agency of the State or Federal Government in lieu of destruction as required by this chapter. [¶] The officer delivering the firearms shall take a receipt for them containing a complete description thereof and shall keep the receipt on file in his office as a public record." (Stats. 1953, ch. 36, § 1, p. 656.)

Effective November 10, 1969, the following provisions were added to the section: "Any law enforcement agency which has custody of any firearms or any parts of any firearms which are subject to destruction as required by this chapter may, in lieu of destroying such weapons, retain and use any of them as may be useful in carrying out the official duties of such agency, or may turn over to the criminalistics laboratory of the Bureau of Criminal Identification and Investigation or the criminalistics laboratory of a police department, sheriff's office or district attorney's office any such weapons as may be useful in carrying out the official duties of their respective agencies. [¶] Any firearm or part of any firearm which, rather than being destroyed,

Despite these lacunae of proof,[7] the evidence not only shows that a representative of the official agency by which the defendant was employed, and in the case of exhibit 5, the defendant himself, was in lawful custody of each of the weapons in 1966, and that in 1972 each of the weapons was found in defendant's house in his constructive possession, but also that each weapon was inscribed with his initials, and a number which corresponded with his badge number, that all four weapons were discovered together in a place which appeared to be a place of concealment, and that the defendant had admitted an interest in acquiring illegally secured pistols.

The question here is not whether the circumstantial evidence of guilt cannot be reconciled with any other rational conclusion (cf. CALJIC (3d ed. 1970) No. 2.01), but whether it would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. The former question is one to be resolved by the ultimate trier of fact. The employment gave access to the weapons which were shown to be in official custody; the marking of the guns with not only the defendant's initials but also a number which coincided with his first badge number, permits the inference that he came into possession of the weapons during his employment by the sheriff's office and before March 1, 1968, when he was issued a new number. Although there may have been many ways that the weapons could have returned to legitimate channels of trade, there is no evidence that they did so. From all that appears the dominion and control evinced by the inscriptions on the weapons continued after September 23, 1969, when his employment terminated and any claim of right he might have had to possess the weapons

is used for official purposes pursuant to this section shall be destroyed by the agency using such weapon when it is no longer needed by the agency for use in carrying out its official duties. [¶] Any law enforcement agency that retains custody of any firearm pursuant to this section or that destroys a firearm pursuant to Section 12028 shall notify the Bureau of Criminal Identification and Investigation of such retention or destruction. This notification shall consist of a complete description of each firearm, including the name of the manufacturer or brand name, model, caliber, and serial number." (Stats. 1969, ch. 401, § 1, p. 932.)

[7]The magistrate had commented, "That . . . goes back seven years. The guns might have gone through ten different hands by then, for all I know, before they got to Mr. Eitzen. We're dealing here with a long period of time. There are a lot of unexplained gaps as far as—

". . . . . . . . . . . . . . .

"We don't have any indication the cases were either closed or not closed, whether he had permission to have them or not have permission to have them. And that—that's a pretty good loose end in my opinion. I don't know."

Nevertheless he held the defendant on counts III and IV which referred to exhibit 4 the gun taken from witness Murphy when he was arrested September 24, 1966.

by virtue of that employment also ceased to exist. The fact that not one, but four weapons, were found together and that they were found in a logical place of concealment, supports the inference that the possession in 1972 was unlawful, and must be weighed against the surmise that each of the four guns found its way into private ownership and was individually or collectively acquired by the defendant. If so, did he merely acquire for sentimental sake weapons which had been inscribed "54" or did he subsequently so inscribe them for the same motive?

The trial court erred in overruling the magistrate's finding of reasonable and probable cause with respect to the charge predicated on exhibit 4, and in finding that there was no reasonable or probable cause for the charges based on exhibits 5, 6 and 7 which were properly filed by the district attorney under the provisions of section 739.

### III

▆ The defendant has persistently raised the defense of the statute of limitations. The prosecution throughout has relied upon an allegation reading ". . . said offense having been discovered on or about October 7, 1972." The defense was overruled by one magistrate following legal argument, apparently on demurrer, when it appeared that the statute had been amended to run from a discovery in a theft case. It was renewed before the magistrate hearing the preliminary examination, but apparently overruled by him, since he held the defendant to answer for the theft of exhibit 4. When this defense was renewed in connection with the motion under section 995 of the Penal Code, the trial judge sustained it. His order recited, "Further, the prosecution has not met its burden as to the statute of limitations."

The burden on the prosecution has been set forth as follows: "An accusatory pleading must allege facts showing that the prosecution is not barred by the statute of limitations [citations]. . . . [¶] [A]s the bar of the statute is a jurisdictional defect rather than simply an affirmative defense which must be raised by special plea (such as double jeopardy), the burden is on the People of establishing that the offense was committed within the applicable period of limitations. [Citations.] Failure to sustain that burden will result in vacation or reversal of the judgment of conviction. [Citations.] It follows that if the evidence upon which the indictment is based is to 'warrant a conviction by a trial jury' (Pen. Code, § 939.8), it must include at least some evidence that the prosecution is not barred by the statute of limitations." (*People* v. *Crosby* (1962) 58 Cal.2d 713, 724 and 725 [25 Cal.Rptr. 847, 375 P.2d 839]. See also *People* v. *McGee* (1934)

1 Cal.2d 611, 613-614 [36 P.2d 378]; *Sobiek* v. *Superior Court* (1972) 28 Cal.App.3d 846, 849 [106 Cal.Rptr. 516]; *People* v. *Doctor* (1967) 257 Cal.App.2d 105, 110-111 [64 Cal.Rptr. 608]; *People* v. *Cunningham* (1950) 99 Cal.App.2d 296, 299 [221 P.2d 283]; *People* v. *James* (1943) 59 Cal.App.2d 121, 122 [138 P.2d 30]; and *People* v. *McGill* (1935) 10 Cal.App.2d 155, 159-160 [51 P.2d 433].)

At all times during the defendant's employment section 800 of the Penal Code provided: "An indictment for any other felony [specific felonies not pertinent here] must be found, and [*sic* "an"] information filed, or case certified to the superior court, within three years after its commission. . . ." (Stats. 1941, ch. 1113, § 1, p. 2816.)

On November 10, 1969, about seven weeks after the termination of defendant's employment, amendments were made to section 800 which rephrased and added "grand theft" to the excluded provisions, and a final sentence which read "An indictment for grand theft shall be found, an information filed, or case certified to the superior court within three years after its discovery." (Stats. 1969, ch. 1171, § 1, p. 2266.) Subsequent amendments have added other felonies to the exclusion and to the last sentence. (See Stats. 1970, ch. 704, § 1, p. 1333; Stats. 1971, ch. 954, § 1, p. 1860; Stats. 1972, ch. 1046, § 2, p. 1923.)

Before reviewing the allegations of the amended information and the evidence produced at the preliminary hearing to determine whether the prosecution has met its pretrial burden on this issue, it is necessary to consider two contentions raised by the amendment to the statute. The first is whether the statute can properly extend the period of limitations. If prosecution for any of the grand thefts alleged was barred at the time the statute was amended, it cannot be revived by the amendment. In *Sobiek* v. *Superior Court, supra,* the court was concerned with the 1970 amendment to the statute which included forgery from "within three years after its commission" provision and placed it in the "within three years after its discovery provision." The court concluded, "The statute of limitations having run prior to the amendment extending it, application of the amendment to petitioner's situation would constitute application of ex post facto legislation." (28 Cal.App.3d at p. 851.)

In this case it is alleged that each theft was committed during the period beginning no earlier than November 11, 1966, and extending to September 23, 1969, when the defendant's employment as a deputy sheriff terminated. Under those allegations the offense could still be prosecuted on November 10, 1969, when the statute was amended. The matter is governed by the

rule enunciated by Judge Learned Hand in *Falter* v. *United States* (2d Cir. 1928) 23 F.2d 420 [cert. den. (1928) 277 U.S. 590 (72 L.Ed. 1003, 48 S.Ct. 528)] which upheld the right to prosecute within a period extended by an amendment to an existing statute if the amendment was adopted prior to the expiration of the original period of limitations. He stated, "But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it." (23 F.2d at p. 426. See *People* v. *Ward* (1958) 50 Cal.2d 702, 709 [328 P.2d 777] [overruled on other grounds *People* v. *Morse* (1964) 60 Cal.2d 631, 649 (36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810)]; *Sobiek* v. *Superior Court, supra,* 28 Cal.App.3d at p. 850; and *People* v. *Snipe* (1972) 25 Cal.App.3d 742, 748 [102 Cal.Rptr. 6].)

The proof at the preliminary hearing shows, however, that three of the weapons came into possession of law enforcement officials prior to November 11, 1966. If the proof showed an appropriation by the defendant before November 11, 1966, the prosecution would be barred. The evidence at the preliminary hearing permits the inference that the weapons were taken as late as September 23, 1969, so it cannot be said as a matter of law that the amended statute does not apply.

The second question raised is whether the discovery intended is the discovery of the loss or the discovery of the crime. In other words if the thefts were discovered on or before April 8, 1970, the charges of theft in the information filed April 9, 1973, would be barred by the statute of limitations. Section 799 extends the time of prosecution for public embezzlement and two other offenses to "any time after the discovery of the crime." There is no mention of "crime," in the amendment to section 800 and it is suggested that the discovery of a loss of property should set the statute in motion. (Cf. Review of Selected 1969 Code Legislation (Cont.Ed.Bar) p. 165; and *Review of Selected 1970 Legislation* (1971) 2 Pacific L.J. 275, 362.)

It is not alleged, nor does the proof at the preliminary hearing require a finding that the loss was discovered before October 7, 1972, when the weapons were found in the defendant's constructive possession. Nevertheless, it may be argued that under the circumstances of this case there should have been some diligence in discovery that an offense had been committed. (See *People* v. *Doctor, supra,* 257 Cal.App.2d at pp. 111-113; and Review of Selected Code Legislation (Cont.Ed.Bar) *supra,* p. 165.) The fact that the evidence points to embezzlement of property which may have been properly entrusted to the defendant is a factor to be considered.

In any event, neither pleading nor proof at the preliminary examination sustains the finding against the People on the issue of the statute of limitations so as to warrant a dismissal of the charges. The resolution of that issue must await the trial.

The dismissal of counts III, IV, V and VI of the amended information is reversed.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied December 19, 1974, and the following opinion was then rendered:

THE COURT.—By petition for rehearing defendant asserts confusion as to whether the prosecution must prove when the crime was discovered, and, if so, whether such proof must be made at the preliminary hearing. His confusion is engendered by a failure to appreciate the issue posed at this stage of the proceedings. As pointed out in the opinion, the answer to both questions is in the affirmative. The proof, however, insofar as it indicates defendant's status as an embezzling employee sustains the implied finding of the magistrate that the crime was not discovered until after April 8, 1970, or in October 1972.

Respondent's petition for a hearing by the Supreme Court was denied January 16, 1975.