Filed 5/2/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DIANA LOVEJOY,<br><br>    Defendant and Appellant. | D080941<br><br><br><br>(Super. Ct. No. SCN363925) |

APPEAL from an order of the Superior Court of San Diego County, Sim von Kalinowski, Judge. Affirmed.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Lynne G. McGinnis, James M. Toohey, Christine Levingston Bergman and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Diana Lovejoy was convicted of conspiring with her codefendant, Weldon McDavid, to murder her ex-husband, Greg Mulvihill. She was also found guilty of attempted murder after McDavid shot and wounded Mulvihill. Several years after her convictions were final, she sought to be resentenced pursuant to current Penal Code[1] section 1172.6, claiming that both convictions may have been based on a theory of imputed malice. The trial court disagreed and denied her petition for relief without an evidentiary hearing. Based on the trial record, including in particular the verdicts and jury instructions, we conclude that Lovejoy's conviction for conspiracy to commit murder was necessarily based on a jury finding that she personally harbored an intent to kill, making her ineligible for relief under the statute. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2017, Lovejoy and her lover, codefendant Weldon McDavid, were convicted of conspiracy to commit murder (count 1) and premeditated attempted murder (count 2). As to both counts, the alleged victim was Lovejoy's ex-husband, Greg Mulvihill. Consistent with their plan, Lovejoy drove McDavid, a former Marine Corps firearms instructor, to a secluded location. After she left, McDavid lured Mulvihill to his location using an untraceable cell phone. Hidden in some bushes, McDavid fired a single shot from a sniper rifle that wounded but did not kill Mulvihill. (See *People v. Lovejoy* (July 28, 2020, No. D073477) [nonpub. opn.] (*Lovejoy*).)[2]

---

[1] Further undesignated statutory references are to the Penal Code.

[2] These skeletal facts, provided for context, are taken from our prior opinion and are not disputed by the parties.

Both Lovejoy and McDavid filed appeals, and while their appellate cases were pending the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which amended sections 188 and 189 to substantially narrow murder liability in California based on the felony murder rule and the natural and probable consequences doctrine. (See *People v. Curiel* (2023) 15 Cal.5th 433, 448–449 (*Curiel*); *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) Lovejoy argued the changes to section 188 applied retroactively to her premeditated attempted murder offense. (*Lovejoy, supra*, D073477.) In her view, the statutory changes that eliminated natural and probable consequences as a viable theory of attempted murder meant the trial court committed reversible error when it "instruct[ed] [the jury] on criminal liability for acts done (e.g., attempted murder) that are natural and probable consequences of the conspiracy to commit murder." (*Ibid.*) Our opinion assumed "for the purpose of addressing Lovejoy's argument, that [Senate Bill 1437's] provisions apply to attempted murder and that the court erred by instructing on the natural and probable consequences theory." (*Lovejoy, supra*, D073477.) We nonetheless concluded that any assumed error was harmless beyond a reasonable doubt because "the jury in fact, necessarily found that Lovejoy had the requisite malice for attempted murder (i.e., that she had the intent to kill Mulvihill)." (*Ibid.*) Our conclusion was based on the jury's independent determination that Lovejoy was guilty of conspiracy to commit *murder*, which necessarily required a finding that she possessed an intent to kill. (*Ibid.* ["By finding Lovejoy guilty of conspiracy to commit murder (count 1), the jury necessarily found that she had the intent to unlawfully kill Mulvihill."].)[3] Both of Lovejoy's convictions were affirmed on appeal.[4]

---

[3] We view it as an intriguing question whether our prior opinion

The Legislature subsequently extended relief to defendants convicted of attempted murder based on the natural and probable consequences doctrine. (Sen. Bill No. 775, ch. 551 (2021–2022 Reg. Sess.) § 1 (Senate Bill 775).) Lovejoy then filed a petition for resentencing under former section 1170.95 (now section 1172.6). In her form petition, she alleged that she had been "convicted of . . . attempted murder . . . following a trial" and "could not presently be convicted of [conspiracy to murder] . . . or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."[5] Following the appointment of counsel and briefing, the superior court denied the petition in a detailed statement of decision, concluding that Lovejoy "failed to make a prima facie showing for relief under section [1172.6]."

_____

constitutes law of the case on the question Lovejoy seeks to raise in her resentencing petition. (See *People v. Medrano* (2024) 98 Cal.App.5th 1254, 1264, distinguishing *People v. Harden* (2022) 81 Cal.App.5th 45, 50.) But because the Attorney General does not attempt to defend the trial court's ruling on that basis, we offer no opinion on the viability of that theory.

4  McDavid's sentence was vacated and the matter was remanded for resentencing. The resentencing order that followed was the subject of a subsequent appeal. (See *People v. McDavid* (Apr. 29, 2024, S275940) ___ Cal.5th ___ [2024 Cal.Lexis 2292].)

5  The bracketed language was a handwritten interlineation on the form, which as printed merely speaks of a conviction for "murder or attempted murder" with no mention of conspiracy.

**DISCUSSION**

When a trial court reviews a petition for resentencing under section 1172.6, it must first decide if the petitioner has established a prima facie case for relief under the statute. (*Lewis, supra,* 11 Cal.5th at p. 971.) The court accepts the allegations as true and determines whether the petitioner would be entitled to relief if he or she proves the allegations. (*Ibid.*) In making its evaluation, the court may review the record of conviction—including the charging documents, jury instructions, verdicts, and to a limited extent any prior appellate opinion—to determine if the petitioner's allegations are conclusively rebutted by the record. (*Id.* p. 972; *People v. Strong* (2022) 13 Cal.5th 698, 708.) But the court may not engage in factfinding and weighing credibility at the prima facie stage of petition review. (*Lewis,* at p. 971.) A court's decision to deny a resentencing petition at the prima facie stage " 'is a purely legal conclusion, which we review de novo.' " (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101; see also *People v. Flores* (2022) 76 Cal.App.5th 974, 991.)

Because the legal analysis differs, we separately consider Lovejoy's contentions that she could no longer be convicted of either attempted murder or conspiracy to commit murder because of the statutory changes effected by Senate Bill 1437 and Senate Bill 775.

**A.  *Conviction for Attempted Murder***

Following the passage of Senate Bill 775 in 2022, it is now clear that defendants like Lovejoy convicted of attempted murder are potentially eligible for relief under section 1172.6 if the conviction could have been based on the natural and probable consequences doctrine. Indeed, subdivision (a)(1) of section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine." (*People v. Coley* (2022)

5

77 Cal.App.5th 539, 548.) Accordingly, Lovejoy's petition was properly denied as to her attempted murder conviction only if the record affirmatively demonstrates the jury did not rely on the natural and probable consequences doctrine.

In finding that Lovejoy had failed to establish a prima facie case for relief, the trial court focused on the fact that the jury convicted Lovejoy of conspiracy to commit murder, which necessarily required a finding that she intended to kill Mulvihill. In the court's view, because the object of the conspiracy to murder and the intended victim of the attempted murder were the same person, the conspiracy verdict eliminated the possibility that jurors relied on the natural and probable consequences doctrine to convict Lovejoy of attempted murder.

Lovejoy contests this reasoning. She contends the jury could have reasonably concluded from the evidence that she understood "McDavid would only frighten Mulvihill when the two men met that night." She points to instructions provided to the jury regarding the crime of conspiracy, emphasizing that the jurors were instructed not only with regard to the conspiracy to commit *murder* as charged in count 1, but also as to the lesser included offense of conspiracy to commit an *assault with a firearm*. She then highlights an additional instruction on the liability of a conspirator for a coconspirator's acts. (CALCRIM No. 417.) This instruction told the jury that a member of a conspiracy is liable not only for crimes she conspires to commit, but also "for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a *natural and probable consequence* of the common plan or design of the conspiracy." (*Ibid.,* italics added.) Relying on this combination of instructions, Lovejoy suggests we cannot conclusively rule out the possibility that the jury may have utilized

6

an impermissible natural and probable consequences theory. As she phrases it, she is entitled to an evidentiary hearing because "the jury instructions on co-conspiracy liability permitted the jury to find her guilty of attempted murder based upon the natural and probable consequences doctrine."

In Lovejoy's posited scenario, she and McDavid agreed that McDavid would shoot in Mulvihill's direction, intending to frighten him. But thereafter, McDavid deviated from the plan and intended to kill Mulvihill when he shot him. The jury nonetheless convicted Lovejoy of attempted murder, reasoning that McDavid's conduct—shooting Mulvihill with an intent to kill—while not intended by Lovejoy was nonetheless a natural and probable consequence of the conspiracy to assault him with a firearm. In that way, McDavid's malice/intent to kill was improperly imputed to Lovejoy.

Lovejoy is correct that at this stage of the proceedings, it is neither our function nor that of the trial court to evaluate the likelihood the jury would have accepted a factual scenario that would entitle the defendant to relief under section 1172.6. At the prima facie stage, we can only consider whether relief is *possible* given the record of conviction, including the jury's verdicts and instructions.

Here, the problem is that Lovejoy's factual theory cannot be squared with the instructions and the jury's verdict. If the jury believed Lovejoy only agreed to frighten Mulvihill, but relied on the natural and probable consequence doctrine to convict her of attempted murder, it would have found her guilty of the lesser included offense of conspiracy to commit assault with a firearm. But that is not what happened. She, along with McDavid, were convicted of conspiracy to commit *murder*, which necessarily required an intent to kill. (CALCRIM No. 563 [requiring agreement "to intentionally and unlawfully kill"].) And a finding that the defendant intended to kill

7

eliminates any need or reason to rely on the natural and probable consequence doctrine.

The Supreme Court employed analogous reasoning in *People v. Beck and Cruz* (2019) 8 Cal.5th 548 (*Beck and Cruz*), where the two defendants were convicted of first degree murder and conspiracy to commit murder as to the same victims. As Lovejoy argues here, defendants in *Beck and Cruz* maintained "that the trial court's conspiracy instructions improperly allowed [them] to be convicted of first degree premeditated murder as an aider and abettor under the natural and probable consequences doctrine." (*Id.* at p. 644.) Although the Attorney General conceded error in the giving of the natural and probable consequences instruction, the Supreme Court found the error harmless. In the court's view, there was "no possibility" that defendants "were found guilty of murder on a natural and probable consequences theory" because they "were charged with [and convicted of] conspiracy *to murder*, not conspiracy to commit a lesser crime that resulted in murder." (*Id.* at p. 645.)

In *People v. Medrano* (2021) 68 Cal.App.5th 177 (*Medrano I*), the Court of Appeal relied on *Beck and Cruz* to affirm the denial of a resentencing petition under former section 1170.95, holding that a defendant concurrently convicted of first degree murder and conspiracy to commit murder was ineligible for relief as a matter of law. (*Medrano I*, at p. 179.) Just as Lovejoy relies on the natural and probable consequences language in CALCRIM No. 417, the defendant in *Medrano I* cited similar language in the instructions provided to his jury. (*Medrano I,* at p. 184 [quoting functionally identical language from CALJIC No. 6.11].) The appellate court nonetheless concluded that he "was not convicted of first degree murder under this doctrine," which focuses on the defendant's intent to commit a lesser (target)

crime that has foreseeably greater consequences. (*Medrano I,* at p. 182.) "Here," the court emphasized, "the target offense was first degree murder" and "[w]e know this because appellant was convicted of conspiracy to commit first degree murder." (*Id.* at pp. 182–183, italics omitted.)

The thrust of Lovejoy's argument is that due to the statutory changes effected by Senate Bill 1437, the jury should not have been given instructions that allowed it to convict her of attempted murder based on a natural and probable consequences theory. But in ruling on the adequacy of a prima facie showing under section 1172.6, the issue is not whether there was a theoretical error in the jury instructions. The relevant question is whether it is possible Lovejoy was convicted of attempted murder based on a now-impermissible theory, i.e., the natural and probable consequences doctrine. As both *Beck and Cruz* and *Medrano I* make clear, the natural and probable consequences instruction as applied to a conspiracy (CALCRIM No. 417) is problematic in this context only where a defendant is convicted of murder or attempted murder based on a conspiracy to commit "a lesser crime that resulted in murder." (*Beck and Cruz, supra,* 8 Cal.5th at p. 645; see also *Medrano I, supra,* 68 Cal.App.5th at p. 184 ["First degree murder was the object of the conspiracy, not the natural and probable consequence of an act committed to further the object of the conspiracy."].) Here, where Lovejoy was found guilty of conspiring with McDavid to *murder* Mulvihill, there is no possibility she "could not presently be convicted of . . . attempted murder because of changes to Section 188 or 189 made effective January 1, 2019 [by Senate Bill 1437]." (§ 1172.6, subd. (a)(3).)

Citing *People v. Croy* (1985) 41 Cal.3d 1 (*Croy*), Lovejoy argues that "the existence of a conspiracy does not mandate that the jury accept every act by a conspirator is in furtherance of the conspiracy." In *Croy*, the defendant

9

was partying with a large group late one evening. He got into an argument with a police officer who came to quiet the party. After the officer left, the alleged conspiracy began when one member of the group declared, " 'I'm going to shoot him,' " or " 'I'm going to shoot the sheriff.' " (*Croy, supra*, 41 Cal.3d at p. 7.) The group then drove to defendant's girlfriend's house, where he picked up his rifle, then continued on to a liquor store. Some of defendant's cohorts caused a disturbance inside the liquor store, harassing the store clerk and apparently taking multiple boxes of ammunition. The clerk called the police. Multiple police vehicles chased defendant's fleeing car into the mountains, with shots fired from defendant's car towards the police along the way. Defendant's group took refuge in and around a cabin. A gun battle ended with defendant fatally shooting an officer early the following morning. (*Id.*, at pp. 6–11, 17.)

The defendant was convicted of first degree murder in the death of the officer. One theory was that the killing amounted to a felony murder that occurred in the aftermath of the liquor store robbery. Relying on its earlier decision in *People v. Beeman* (1984) 35 Cal.3d 547, the Supreme Court found prejudicial error in the jury instructions on robbery, requiring reversal of that conviction. (*Croy, supra,* 41 Cal.3d at pp. 6, 15–16.) It also reversed the first degree murder conviction, concluding it might have been based on the invalid robbery coupled with the felony murder rule. (*Id.* at p. 16.) In doing so, the court rejected the Attorney General's argument that defendant's conviction for conspiracy to commit murder necessarily established that he harbored malice when he killed the officer, reasoning that "[t]he conspiracy conviction, without more, cannot provide the predicate for appellant's first degree murder conviction." (*Id.* at p. 17.)

Lovejoy views *Croy* as establishing a timing principle requiring a separate finding that defendant harbored an intent to kill at the time of the actual shooting. In her view, the fact that the jury found she and McDavid intended to kill Mulvihill at some *earlier* point in time, when their conspiracy was formed, does not necessarily mean she had the same intent on the night of the shooting when she drove McDavid to the scene of the attack. As a result, she contends, some jurors could have resorted to the natural and probable consequences theory to convict even if they concluded she did not intend to kill when the crucial shot was fired. Lovejoy is mistaken in her reading of the law.

It is important to recognize that the natural and probable consequences doctrine was not an issue in *Croy*. More importantly, the defendant there was prosecuted as the actual shooter, not an aider and abettor. For an aider and abettor of murder or attempted murder, the timing of the necessary mental state is analyzed differently where there is a preexisting conspiracy to commit murder. A conspiracy is presumed to continue until its object is achieved or frustrated. (*People v. Saling* (1972) 7 Cal.3d 844, 852, 859.) A defendant's responsibility for a coconspirator's pursuit of that object continues until she affirmatively rejects or repudiates it and communicates that repudiation to her former cohorts. (*People v. Crosby* (1962) 58 Cal.2d 713, 730; *People v. Ochoa* (2016) 248 Cal.App.4th 15, 33–34.) "A defendant's mere failure to continue previously active participation in a conspiracy . . . is not enough to constitute withdrawal." (*Crosby,* at p. 730.)

Here, Lovejoy has maintained she never agreed with McDavid that Mulvihill should be killed. But she has not asserted she *withdrew* from a conspiracy to commit murder that the jury found she joined. The jury was never instructed pursuant to CALCRIM No. 420 regarding withdrawal from a

11

conspiracy, which would have been required had there been substantial evidence to support such a theory. (See Bench Notes to CALCRIM No. 420.) Nor did Lovejoy argue on direct appeal that the trial court erred in failing to do so. Under these circumstances, the jury's finding that Lovejoy intended to kill Mulvihill when the conspiracy was formed continued to make her criminally responsible for McDavid's efforts to achieve that result without any additional finding regarding Lovejoy's specific mental state at the time of the shooting.[6]

---

[6] In a variation on the same theme, Lovejoy also cites the Supreme Court's recent decision in *Curiel, supra,* 15 Cal.5th 433 for the proposition that a finding of intent to kill "does not, itself, conclusively establish that [she] is ineligible for relief." (*Id.* at p. 441.) But the circumstances of *Curiel* are readily distinguishable. There, the defendant was charged with murder based on alternative theories of direct aiding and abetting and aiding and abetting based on the natural and probable consequences doctrine. (*Id.* at p. 446.) The jury verdict did not specify which theory the jury adopted. A separate sentencing enhancement, found true by the jury, determined that the defendant intended to kill the victim and that the murder was carried out to further a criminal street gang's activities. Even so, the Supreme Court determined that where the jury was permitted to find aiding and abetting liability for murder based on the now-prohibited natural and probable consequences doctrine, the abstract presence of an intent to kill was not enough to show that the defendant remained guilty of murder after the recent amendments to section 188. It still must be established that the defendant knew the perpetrator intended to kill and acted to aid the commission of that killing. (*Curiel,* at p. 463.)

Unlike in *Curiel,* Lovejoy's jury was never instructed on aiding and abetting liability for attempted murder based on a natural and probable consequences theory. As we have explained, the only instruction on natural and probable consequences pertained to the liability of a conspirator for the acts of her coconspirators. And the only conspiracy of which Lovejoy was convicted was a conspiracy to commit murder. Moreover, Lovejoy's jury was specifically instructed that to convict her of a conspiracy to commit murder, jurors had to find not merely that she intended to kill Mulvihill, but also that the members of the conspiracy agreed to kill him and that one or both coconspirators committed an overt act to accomplish the killing.

**B.** *Conviction for Conspiracy to Commit Murder*

Lovejoy relies on a similarly misdirected reading of the law and instructions in arguing that she made a prima facie case for resentencing relief on her conspiracy conviction. She again focuses on the natural and probable consequences language in CALCRIM No. 417 to suggest that the jury could have found her guilty of conspiracy to commit murder based on McDavid's malice being imputed to her. She is mistaken.

To begin with, the express terms of section 1172.6 provide the potential for resentencing relief only for persons convicted of murder, attempted murder, or manslaughter. Conspiracy to murder is not mentioned in the statute. As the court explained in *People v. Whitson* (2022) 79 Cal.App.5th 22 (*Whitson*), one key purpose of Senate Bill 775 was to "include convictions for attempted murder and manslaughter in the list of crimes subject to petition." (*Whitson,* at p. 34.) *Whitson* found it "particularly significant" that "the Legislature had the opportunity to extend [resentencing] relief to conspiracy to murder convictions alongside attempted murder and manslaughter convictions, but did not." (*Id.* at pp. 34–35.) As a result, the appellate court concluded, section 1172.6 "does not permit a challenge to a conviction for conspiracy to murder." (*Whitson,* at p. 35.)

As *Whitson* goes on to explain, the failure to include conspiracy to commit murder in the list of offenses eligible for resentencing relief is entirely consistent with the legislative purposes in enacting both Senate Bills 1437 and 775—"to ensure, with certain exceptions related to felony murder that 'a conviction for murder requires that a person act with malice aforethought,' and that 'culpability for murder [is] premised upon that person's own actions and subjective mens rea.' (Stats. 2018, ch. 1015, § 1, subd. (g).)" (*Whitson, supra*, 79 Cal.App.5th at p. 35.) Contrary to Lovejoy's

13

assertion, a conviction of conspiracy to commit murder "is based on the conspirator defendant's own subjective *mens rea* [and] requires that a defendant either act with malice or intend to kill." (*Id.* at pp. 35–36, italics added, citing *Medrano I, supra,* 68 Cal.App.5th at pp. 182–183; see *People v. Swain* (1996) 12 Cal.4th 593, 607 ["conviction of conspiracy to commit murder requires a finding of intent to kill"].)

Lovejoy inexplicably argues that the natural and probable consequence language in CALCRIM No. 417, coupled with the prosecutor's argument linking the conspiracy with the attempted murder, "funneled the jury into convicting appellant of conspiracy to commit murder without ever having to find that appellant had the intent to murder." To the contrary, the instruction on conspiracy to commit murder (CALCRIM No. 563) required the jury to find both that: (1) Lovejoy "intended to agree and did agree with [McDavid] to *intentionally* and unlawfully *kill*"; and (2) "At the time of the agreement, [Lovejoy] and [McDavid] intended that one or more of them would *intentionally* and unlawfully *kill*[.]" (*Ibid.,* italics added.) The jury was also told that the prosecution "must prove that the members of the alleged conspiracy had an agreement and *intent to commit murder*." (*Ibid.,* italics added.) Thus, in convicting Lovejoy of conspiracy to commit murder, the jury necessarily found she joined a conspiracy that had as its object killing Mulvihill and that she personally intended to kill him. She could not have been convicted of conspiracy to murder based on McDavid's imputed malice.

Lovejoy further suggests that the instructions "allowed the prosecution to bootstrap the weaker charge (conspiracy to commit murder) with the charge with the vastly stronger evidence, attempted murder." But the linkage she identifies is not due to any erroneous instruction; it is a function of the facts of the case and the jury's finding that Lovejoy agreed with

14

McDavid to kill Mulvihill and then attempted to carry out that plan. Her arguments ignore the fact that CALCRIM No. 417, which addresses a coconspirator's liability for acts committed by other members of the conspiracy, did not become relevant until the jury found the existence of a conspiracy to commit *murder* in which each of the coconspirators possessed an intent to kill the victim.

In short, because the jury necessarily found that Lovejoy personally possessed an intent to kill as part of a conspiracy to commit murder, she is ineligible for relief under section 1172.6. (*People v. Allen* (2023) 97 Cal.App.5th 389, 393, 398.)

## DISPOSITION

The order denying Lovejoy's petition for resentencing is affirmed.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

BUCHANAN, J.

15